THE MERCY HOSPITAL vs. RATE SETTING COMMISSION.

Suffolk.  March 3, 1980. — June 30, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Hospital,* Hospital charge control regulation, Costs.  *Department of Public Health.  Rate Setting Commission.*

It was within the authority of the Rate Setting Commission under G. L. c. 6A, § 38, to disapprove charges for services to be afforded by a hospital by means of a newly purchased computed tomography scanner on the ground that the hospital had failed to secure a determination of need from the Department of Public Health covering the services to be provided by the scanner.  [37-42]

CIVIL ACTION commenced in the Superior Court Department on April 19, 1979.

The case was heard by *Morse,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Terry Jean Seligmann,* Assistant Attorney General, for the defendant.

*Ronald B. Schram (R. K. Gad, III,* with him) for the plaintiff.

*Ernest M. Haddad & Edward J. Dailey* for Blue Cross of Massachusetts, Inc., amicus curiae, submitted a brief.

KAPLAN, J.  The plaintiff, a hospital in Springfield licensed by the Department of Public Health (Department), applied to the defendant Rate Setting Commission (Commission) on January 5, 1979, for approval of charges for services to be afforded by means of a computed tomography (CT) scanner recently purchased.[1]  The Commission treated the charges

---

[1] The scanner, combining radiographic and computed technology, presents a cross-sectional image of the object derived from X-rays taken from various angles. See the Informational Bulletin referred to in note 3, *infra.*

as "new charges," defined by G. L. c. 6A, § 31, as appearing in St. 1976, c. 409, § 1, as "any charges for hospital supplies, care, services or accommodations which were not offered by the hospital on [April 15, 1975] whether or not a determination of need by the department of public health under [G. L. c. 111, § 25C] was required as a prerequisite to offering the service. . . ." Section 38 of c. 6A provides for the approval or disapproval of applications for new charges and empowers the Commission to issue pertinent regulations.[2] One of these stated that "in any event no costs for care, services, supplies and accommodations which require a Determination of Need pursuant to G. L. c. 111, §§ 25B-25G but for which the hospital did not seek and receive approval, shall be considered reasonable or an allowed cost." 114.1 Code Mass. Regs. § 8.02(4) (c), appearing at 124 Mass. Reg. 106 (1978). Accordingly, the Commission made formal inquiry of the Department whether the plaintiff was required to secure a determination of need (DON) covering the services to be provided by the CT scanner, and, if so, whether a DON had been made.

Facts appeared as follows. The plaintiff had contracted to purchase the scanner on October 31, 1978, for a price of $130,000, and on December 11, 1978, it received delivery of the apparatus. The Department had made it known through an "Informational Bulletin,"[3] later formulated as part of a departmental regulation, 105 Code Mass. Regs. § 100.040, as amended by 133 Mass. Reg. 41 (1978), that CT scanning services offered by a hospital for the first time (as was the plaintiff's case) constituted a "substantial change in services"

---

[2] The text of § 38 appears at note 7, *infra*.

Violation of G. L. c. 6A, §§ 31-46, or of a regulation of the Commission subjects a hospital "to a civil penalty of not more than one thousand dollars for each day on which such violation occurs or continues." G. L. c. 6A, § 44.

[3] Issued on February 4, 1978. This described the novel character of CT scanning and concluded that a hospital's adoption of this service would implicate G. L. c. 111, § 25B, as a "substantial change in services"; also that purchase of the scanner might be a "substantial capital expenditure" within the same section. See note 4, *infra*.

in the sense of G. L. c. 111, § 25B,[4] with the result that the rendering of those services was prohibited unless a DON therefor had been made by the Department. *Id.* at § 25C.[5] The plaintiff, however, had not applied for a DON, nor had any been made. This information was furnished by the Department to the Commission; in light of which the Commission on March 8, 1979, voted to deny the new charges applied for.

The plaintiff's response was to commence the present action against the Commission on April 19, 1979. The complaint alleged that the Commission lacked the power to deny the charges on the ground assigned, i.e., the failure to obtain the DON. A declaration was requested which would in effect invalidate the Commission's regulation 114.1 Code Mass. Regs. § 8.02(4) (c), quoted above; and a judgment was prayed requiring the Commission to approve charges.

The Commission answered. Affidavits were filed. The plaintiff's motion for judgment on the pleadings was countered by the Commission's motion for summary judgment. The case summed up as already outlined, and we need only add, as is apparently agreed, that any further effort by the

---

[4] A "substantial change in services" is "a change in kind, rather than degree, of service as further defined by the department." G. L. c. 111, § 25B. The Department's regulation, cited just above in our text, denominates CT scanning a "major service," and, taken in connection with 105 Code Mass. Regs. § 100.054 (1978), which elaborates upon "substantial change in services," means that adoption of CT scanning service requires a DON.

[5] Section 25C, as appearing in St. 1977, c. 945, § 3, provides, in part, that "no person or agency of the commonwealth or any political subdivision thereof shall make substantial capital expenditures for construction of a health care facility or substantially change the services of such a facility unless there is a determination by the department that there is need therefor [with certain provisos]." Violation "shall constitute grounds for refusing to grant or renew, modifying or revoking the license of a health care facility or of any part thereof." G. L. c. 111, § 25C. The Department may bring an enforcement proceeding in the Superior Court. *Id.* Under departmental regulations, a hospital might request an advisory ruling whether a DON was required before submitting a complete application. 105 Code Mass. Regs. § 100.120 (1978). Neither procedure has been availed of.

plaintiff to secure administrative relief within the Commission would be futile; and that the parties proceeded in this action on the assumption that a DON was required, with the plaintiff reserving the question of the correctness of the assumption for possible further contest.

The judge below granted summary judgment for the plaintiff, and we allowed the Commission's application for direct appellate review.[6]  We reverse.

We think the case is on its way to solution on bare inspection of the text of G. L. c. 6A, § 38, set out in the margin.[7] Under § 38 a hospital intending to implement a new charge is to present described supporting data.  "The commission shall from time to time issue regulations setting forth the procedure and substantive standards to be applied in reviewing an application for new charges."  "The commission may approve or disapprove such applications in whole or in part."  "In reviewing such application, the commission shall consider the relation of the proposed charge to the reasonable cost of such . . . services . . . [with a proviso]." Common sense suggests that in establishing by regulation

---

[6] The hospital agreed to retain billing information and refund payments made for CT scanning services in case the Superior Court's ruling was reversed.

[7] General Laws c. 6A, § 38, inserted by St. 1976, c. 409, § 4, provides: "Any hospital which intends to implement a new charge shall submit an application for approval of such new charge to the commission at least sixty days prior to the implementation of such new charge.  Information supporting the new charge, including a budget and projected cost, volume, utilization and revenue data resulting from the new charge shall be furnished with the application.  The commission may approve or disapprove such applications in whole or in part.  Approval of any proposed new charge shall be deemed granted in the absence of written notification by the commission to the contrary, stating the reasons supporting the commission's actions, within sixty days of such submission.

"The commission shall from time to time issue regulations setting forth the procedure and substantive standards to be applied in reviewing an application for new charges.  In reviewing such application, the commission shall consider the relation of the proposed charge to the reasonable cost of such health supplies, care, services, or accommodations, provided that the commission may not establish a charge for such item which is less than the hospital's base period ratio of total patient care costs to total patient care charges."

the "substantive standards" for approval of charges, it should be, and is, within the delegated powers of the Commission as a rate setting body to adopt the standard that a cost shall not be recognized — and the pertinent charges shall correspondingly be denied — which arises through the provision of services presumptively illegal, here services illegal because a DON has not been sought or obtained (see *Lawrence* v. *Falzarano*, 380 Mass. 18, 23 [1980]). This is only a little less evident than the proposition that the Commission might validly announce by regulation that a cost would not be approved which appeared to arise from the provision of contraband. The propriety of the regulation is fortified by the statutory statement that a charge may be denied in toto, indicating that the Commission is expected in suitable cases to do more than make mere bookkeeping adjustments of costs to arrive at rates of charge. Section 38 has the further statement that in fixing charges the Commission shall consider the underlying reasonable cost of the services, but that does not derogate from the power to outlaw charges claimed on the basis of the costs of prohibited services. There is argument that "reasonable cost" is wholly divorced from the question of the legality of the services, that the Commission may at most consider whether the charges sought are competitive with charges made by others. But we think it entirely appropriate for the Commission to lay down in a regulation that a cost for services which the hospital is forbidden to offer shall be regarded as not "reasonable," and this in fact is the form of the regulation 114.1 Code Mass. Regs. § 802(4) (c). The cost for the scanning service could become "reasonable," and a corresponding charge allowable, if a DON was obtained or was held in a responsible decision to be not required.

The conclusion to which we are drawn by a reading of § 38 is strengthened by taking a view of c. 6A, §§ 31-46, as a whole. See *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 75 (1979); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 524 (1979); *Commonwealth* v. *Cerveny*, 373 Mass. 345, 354

(1977). The statute vests power in the Commission not only to review and approve or disapprove new charges, but similarly to oversee modifications in existing charges (§ 37), and to review hospitals' yearly budgets (§ 39). So also the Commission is charged with establishing "fair, reasonable and adequate rates" to be paid to hospitals by governmental units (§ 32). The legislation in its entirety was intended to commit to the Commission the authority necessary "to stabilize hospital charges . . . [and] to control the costs of purchasing hospital care in the commonwealth" (quoted from the preamble to the predecessor law, St. 1975, c. 424).

In *Affiliated Hosps. Center, Inc.* v. *Rate Setting Comm'n*, 7 Mass. App. Ct. 563 (1979), the Appeals Court read the legislation correctly as casting on the Commission a "duty to contain spiraling hospital charges" (at 575), and it reasoned that "the Commission in order to control charges, as the Legislature intended it to do, must have some ability to question the legitimacy of a hospital's costs." At 574. The Commission was upheld in so defining the statutory term "total patient care costs" in § 37 (modification in charges)[8] as to refuse to recognize certain actual costs incurred for an increase in patient volume which the applicant had chosen to anticipate, but which had not materialized. "[T]here is no reason," said the court, "why costs incurred for unnecessary expansion of services should be passed on to the consumer via charge modifications . . . when there is no statutory language which requires the Commission to build into its definition of 'total patient care costs' this type of actual expenditure by the hospital." *Id.* at 575. In the present case we have an analogous disallowance of new costs and charges by reason of lack of necessity, or rather failure of proved necessity under a system of DON controls intended to fore-

---

[8] The significance of "total patient care charges" is seen from the statement, "The commission shall provide for modification in charges if the applicant hospital's ratio of total patient care costs to total patient care charges for the applicable fiscal year exceed ninety-five per cent, such modification to permit said hospital to establish the ratio at ninety-five per cent." (Quoting from § 37, fourth par.)

stall indiscriminate building up of plant or services and thus to prevent costs of health care from ballooning skywards. See *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.,* 366 Mass. 734, 735 (1975).

The plaintiff seems not wholly insensitive to an incongruity in the Commission's validating a charge for a service that must be, but has not been legitimated by a DON, but it insists that administrative regularity calls for the Department and the Commission each to cultivate its own garden; thus the complaint challenges the Commission's "jurisdiction" to behave as an "enforcement agency" for the DON law. According to the plaintiff, the Commission must approve charges despite apparent offense to that law, with the Department then scrambling to enforce it. (By the plaintiff's reasoning, the Commission would perhaps have to approve charges for services for which the Department had refused a DON.) It might indeed have been lawful for the Commission in its discretion to maintain such isolation from the Department. But we think it was also lawful, and possibly wiser, for the Commission to adopt a different policy by regulation, especially as the statutes governing respectively the Department and the Commission have the common goal of controlling the cost of health care in the Commonwealth. See *Brookline* v. *Medical Area Serv. Corp.,* 8 Mass. App. Ct. 243, 249-254 & n.21 (1979). See also Weiner, "Reasonable Cost" Reimbursement for Inpatient Hospital Services under Medicare and Medicaid: The Emergence of Public Control, 3 Am. J. of L. & Med. 1, 42 (1977); Lewin, Somers & Somers, State Health Cost Regulation: Structure and Administration, 6 U. Tol. L. Rev. 650, 671 (1975). There is no question of the Commission's usurping the functions of the Department, for the DON issue appears only occasionally and incidentally in the business of the Commission and is dealt with then by exchange of information as we have seen. Just as statutes in the same field are to be construed together, if possible, so as to form an harmonious whole (see *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513-514 [1975]; *Mathewson* v. *Contributory Retirement Appeal Bd.,*

335 Mass. 610, 614 [1957]), so the administration of contiguous statutes by different agencies may aim at cooperation in enforcement if such procedures are not excluded. See *Dedham* v. *Labor Relations Comm'n*, 365 Mass. 392, 402 (1974). It is instructive to find that according to § 32 of c. 6A the Commission's annual report to the Secretary of the Executive Office of Human Services and to the General Court must include an analysis of "the coordination of [the Commission's] rate making function with the rule making functions of the departments of the commonwealth regulating said providers and institutions"; and by § 34 the Commissioner of Public Health serves on the advisory council to the Commission.

A study of legislative history leaves our conclusion undisturbed. It is true that a 1972 interim report of a joint special legislative committee rejected the idea of mandatory "exclusion from a facility's rate base of all expenses associated with a component which did not comply with the determination of need procedure," but that was in relation to a quite different rate setting statute (G. L. c. 7, §§ 30k-30p), since repealed.[9] Even so, the report said, "We make no finding on the Commission's powers in this respect."[10] An early draft of St. 1976, c. 409 (enacting the present c. 6A, §§ 31-46), stated that the Commission should not include in the approved budget of a facility the costs of any service for

---

[9] At the time of the report, the Commission's authority was limited to establishing Medicaid and Blue Cross reimbursement rates; the broader power to approve or disapprove applications for new charges "to the general public for health supplies, care, services and accommodations" (G. L. c. 6A, § 31) was not accorded until 1976. In rejecting the mandatory linkage proposal, the report expressed concern that "such action would not prevent facilities with disallowed costs from shunting such disallowed amounts into the rate base for Medicare, insurance carriers other than Blue Cross, and direct payors — thus increasing costs for such groups. The Committee believes such a possibility should not be allowed." Interim Report of the Joint Special Committee Established to Make an Investigation and Study of Health Benefits and Health Services for Every Citizen of the Commonwealth and Related Matters, 1972 House Doc. No. 5968, at 37.

[10] Interim Report, *supra* at 37.

which a DON was required but had not been obtained
(1976 House Doc. No. 3160, § 38 [c]), but the bill did not go
beyond the Joint Committee on Health Care to which it had
been referred, and was rewritten in committee. See 1976
Senate Doc. No. 1613. The disappearance of a provision
during a legislative journey to enactment does not establish
the contrary to be the law, especially when it appears on
fair analysis of the final text that the provision would have
amounted to surplusage. See *Diamond Crystal Salt Co.* v.
*P.J. Ritter Co.*, 419 F.2d 147, 148 (1st Cir. 1969); 2A C.
Sands, Sutherland Statutory Construction § 48.18 (4th ed.
1973).[11]

As indicated above, the hospital has reserved the conten-
tion that the institution of CT scanner services does not con-
stitute a "substantial change in services," i.e., "a change in
kind, rather than degree, of service as further defined by the
department" (G. L. c. 111, § 25B) (see n.4), and that the
Department's regulation 105 Code Mass. Regs. § 100.040,
as amended (see our text after n.3) as to inauguration of CT
scanning services is invalid or inapposite, so that a DON has
in truth not been required. The plaintiff may desire to
litigate that question as part of the present action (it may be
assumed there is no prospect of relief within the Depart-
ment). Accordingly, the judgment appealed from will be
reversed and judgment with an appropriate declaration will
enter for the Commission, but with leave to the plaintiff
within a time to be set by the judge below to join the De-
partment as a defendant and extend the action to contest
the question of the requirement of a DON.[12]

*So ordered.*

---

[11] The definition of new charges in § 31 of c. 6A (set out in our first par-
agraph of text) says no more than that such charges require Commission
approval whether or not a DON was requisite.

[12] If the plaintiff so elects, the judgment for the Commission may be
regarded as a partial judgment.