ROBERT S. BALDIGA, trustee, vs. BOARD OF APPEALS OF
UXBRIDGE & another.[1]

Worcester. May 7, 1985. — September 12, 1985.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Zoning*, Lot, Exemption. *Statute*, Construction.

With respect to provisions of The Zoning Act affording protection to existing
lots from the effect of restrictive zoning changes, the phrase "as of
January 1, 1976," appearing in the second sentence of the fourth para-
graph of G. L. c. 40A, § 6, qualifies only the statutory condition relating
to the lots' conformity with zoning requirements, and does not limit
such protection to lots appearing on a plan recorded or endorsed before
that date. [832-835]

CIVIL ACTION commenced in the Superior Court Department
on January 27, 1984.

The case was heard by *Mel L. Greenberg, J.*, on a motion
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Henry J. Lane,* Town Counsel (*Shelli C. Elfenbein* with
him) for the defendants.

*William R. Baldiga* for the plaintiff.

ABRAMS, J. At issue in this appeal is the interpretation of
the second sentence of the fourth paragraph of G. L. c. 40A,
§ 6, as amended by St. 1979, c. 106. In January, 1984, the
plaintiff appealed to a judge of the Superior Court from a
decision of the board of appeals of Uxbridge denying building
permits to the Keystone Builders Realty Trust for three contigu-
ous lots. After the parties brought cross motions for summary
judgment, the judge granted the plaintiff's motion and denied

---

[1] The town of Uxbridge. The defendants filed a joint brief and we will
refer to them collectively as the "town."

the town's motion. Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974). The judge, in a comprehensive memorandum of decision, held that "the language of G. L. c. 40A, § 6, par. 4, sentence 2 indicates an intention on the part of the [L]egislature that lots continue to be entitled to 'grandfather' rights for five years from the effective date of zoning amendments. To require that plans for such lots be recorded or endorsed by January 1, 1976 would effectively restrict the applicability of this section contrary to the expressed legislative intent and sound principles of statutory construction." The town appealed and we granted its application for direct appellate review. We affirm.

The issue before us is whether the second sentence of the fourth paragraph of G. L. c. 40A, § 6 (1984 ed.),[2] provides "grandfather" protection to lots created by a plan which was recorded after January 1, 1976. The town asserts that the plaintiff is not afforded any "grandfather rights" by the sentence of G. L. c. 40A, § 6, at issue because: (1) the lots do not meet the requirements that the plan by which the plaintiff's lots were created be recorded or endorsed by January 1, 1976, and that the lots conformed to existing zoning requirements as of January 1, 1976; (2) the purpose and policies of the new chapter

---

[2] General Laws c. 40A, § 6 (1984 ed.), provides in relevant part: "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage. *Any increase in area, frontage, width, yard or depth requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January first, nineteen hundred and seventy-six, whichever is later, to a lot for single and two family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with an[y] adjoining land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy-six,* and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and seventy-five feet of frontage, and provided that said five year period does not commence prior to January first, nineteen hundred and seventy-six, and provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership" (emphasis added).

40A in general are to allow municipalities to effectively amend zoning requirements, and of § 6 in particular, are to eliminate the practice of "checkerboarding"; and (3) the legislative history of the fourth paragraph of § 6 shows that the 1979 amendment, St. 1979, c. 106, adding the second sentence, was not intended to have a continuing effect.

We summarize the facts agreed to by the parties. On November 14, 1979, Keystone Builders Realty Trust (trust), of which Robert S. Baldiga is the sole trustee, purchased a parcel of vacant land in the town of Uxbridge. The trust purchased the premises under the belief that it was entitled as a matter of law under G. L. c. 40A, § 6, to obtain permits allowing it to build a single-family home on each of the three lots constituting the premises. The premises are, and at all relevant times have been, located in an area zoned by the town as agricultural. At all times since the purchase of the premises, the plaintiff has intended to use each of the three lots to construct a single-family home, a use which is permitted as of right in an agricultural district under the town zoning by-law.

The town zoning by-law in effect on and before May 13, 1980, required that building lots in an agricultural zone have a minimum of 200 feet frontage and a minimum lot size of one acre. "Lot 25" has 200 feet total frontage and is 1.20 acres in area; "Lot 26" has 200 feet frontage and is 1.08 acres in area; "Lot 27" has 200 feet frontage and is 1.00 acre in area. Each of the three lots conformed at all times between November 14, 1979, and May 13, 1980, to the town's zoning requirements for a lot on which a single-family home could be constructed. The three adjoining lots have been held in common ownership at all relevant times. The parties stipulated that the lots were shown on a plan containing the Uxbridge planning board's endorsement, dated February 20, 1979, "Approval Under Subdivision Control Law Not Required." The parties also agree this plan was recorded prior to May 20, 1980, the effective date of the relevant zoning amendment. In addition, the premises as a whole have not been held in common ownership with adjoining land by the trust or any other person at any time after November 14, 1979.

On May 13, 1980, the town amended its zoning by-law to require that, effective May 20, 1980, building lots in an agricultural zone have a minimum of 300 feet frontage and a minimum lot size of two acres. In October, 1983, the trust filed timely and proper building permit applications for each of the three lots. The town's building inspector denied the applications. The plaintiff appealed to the town's board of appeals. The board of appeals denied the appeal on the ground that the lots did not have the 300 feet frontage required by the 1980 amendment to the town's zoning by-laws.

We turn first to the statutory language because it "is the principal source of insight into Legislative purpose." *Commonwealth* v. *Lightfoot,* 391 Mass. 718, 720 (1984). *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). When the language is clear and unambiguous, it must be given its plain and ordinary meaning. *Bronstein* v. *Prudential Ins. Co. of Am.,* 390 Mass. 701, 704 (1984).

The sentence of § 6 at issue provides: "Any increase in [an] area . . . requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January [1, 1976], whichever is later, to a lot for single . . . family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with an[y] adjoining land and conformed to the existing zoning requirements as of January [1, 1976] . . . ." The town contends that in the relevant sentence of § 6, fourth par., the words "as of January [1, 1976]" qualify all of the preceding requirements in that sentence: (1) the plan for the lot must have been "recorded or endorsed"; (2) the lot must have been "held in common ownership with an[y] adjoining land;" and (3) the lot must have "conformed to the existing zoning requirements." G. L. c. 40A, § 6. Under the town's interpretation, the plaintiff's lots would not benefit from the "grandfather rights" because the plan for the lots was not "recorded or endorsed" prior to January 1, 1976.

The plaintiff, on the other hand, argues that because the phrase "as of January [1, 1976]," qualifies only the condition relating to conformity with the zoning requirements, the lots

meet all of the conditions necessary to take advantage of the "grandfather rights" in the relevant portion of § 6, including the requirement that the plan have been "recorded or endorsed."[3]

We agree with the plaintiff. "It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 230-231 (1982), quoting *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 133 (1949). Furthermore, the first part of the second sentence of § 6 entitles an owner of property to an exemption from any increase in minimum lot size required by a zoning ordinance or by-law for a period of five years from its effective date or for five years after January 1, 1976, "whichever is later." G. L. c. 40A, § 6. The trial judge concluded that this language manifests the Legislature's intent for the statute to have continuing applicability." We conclude, as we did in *Adamowicz* v. *Ipswich, ante* 757, 762 (1985), that "the statute looks to the most recent instrument of record prior to the effective date of the zoning change." If we were to interpret the "as of January [1, 1976]" clause as qualifying the "plan recorded or endorsed" condition, it would negate the effect of the words "whichever is later." As we read the statute, the phrase "as of January [1, 1976]" only modifies the condition immediately preceding, that requiring conformity with zoning laws.

We reject the town's contention that the statute's use of the word "conformed," rather than "conforms," to precede the phrase "to the existing zoning requirements as of January [1, 1976]" suggests that the plan and the lot must not only conform at some date to the zoning requirements in effect on January 1, 1976, but also must have been in existence in 1976 and conformed to the zoning requirements at that time. The town's argument ignores the fact that the statutory language consistently

---

[3] The town does not dispute that the lots meet the "common ownership" and "conformity" conditions of § 6, fourth par., second sentence.

uses the past tense to describe all of the conditions needed for a lot to qualify for "grandfather" protection. The word "conformed" is thus appropriate in the context of the statutory provision as a whole and does not specifically signify that the lot or plan must have existed before 1976. See Walker v. Board of Appeals of Harwich, 388 Mass. 42, 51 (1983).

The town also argues that the interpretation proposed by the plaintiff would permit the practice of "checkerboarding"[4] as a means of avoiding compliance with local zoning requirements. This result, the town asserts, would contravene the recognition by the new G. L. c. 40A, as enacted by St. 1975, c. 808, of local autonomy in dealing with land use and zoning issues.[5] However, the specific purpose of the disputed sentence, added to G. L. c. 40A, § 6, by the 1979 amendment, was to grant "grandfather rights" to the owners of certain lots of land. If we accept the town's interpretation, the ability to checkerboard two or three parcels would be eliminated as of January 1, 1976. But there also would be a substantial reduction in "grandfather rights," a result which is inconsistent with the general purposes of the fourth paragraph of § 6, which is "concerned with protecting a once valid lot from being rendered unbuildable for residential purposes, assuming the lot meets modest minimum area . . . and frontage . . . requirements." Sturges v. Chilmark, 380 Mass. 246, 261 (1980). See Adamowicz v. Ipswich, supra.

---

[4] "Checkerboarding" refers to a practice by which a large landowner divides his property into single lots held by "straws." Ownership of the property is then divided so as to avoid having two adjacent lots held by one person. Employing the graphics of the checkerboard, Mr. X holds all the black squares, while Mr. Y holds all the red ones and neither "owner" holds two contiguous squares. Thus using two "straws," a large parcel of land could be divided between two parties. The two "straws" were protected from any subsequent increases in minimum frontage or area requirements as owners of single noncontiguous lots under the old zoning enabling act, G. L. c. 40A, § 5A. See Sturges v. Chilmark, 380 Mass. 246, 260 (1980).

[5] Because of the authority given to towns under the Home Rule Amendment, art. 2, § 1, as appearing in art. 89 of the Articles of Amendment to the Massachusetts Constitution, a town was no longer required to seek authority from the State in order to impose controls relative to zoning.

The town asserts that the legislative history of the 1979 amendment to G. L. c. 40A, § 6, manifests the Legislature's intent to apply the new second sentence of paragraph four only to lots existing in 1976, rather than to give the amendment a continuing effect. The support for its argument is not persuasive. The town correctly notes that the title of St. 1979, c. 106, "An Act further regulating existing structures, uses, permits and certain subdivision plans," mentions "existing" uses, permits, and plans. The word "lots", however, is not mentioned in the title of the act. Furthermore, although the title of an act is often helpful in interpreting the body of a statute, it is not conclusive. See *American Family Life Assurance Co.* v. *Commissioner of Ins.,* 388 Mass. 468, 474, cert. denied, sub nom. *American Family Life Assurance Co.* v. *Hiam,* 464 U.S. 850 (1983). The town also contends that its interpretation of the statutory language is supported by the change in wording from the prior version of the 1979 amendment (a lot had to conform "to the prior existing zoning requirements") to the enacted version. 1979 House Doc. No. 5731. We draw no conclusions as to the legislative intent from such a change in wording because the Legislature can change the language for any one of numerous reasons, or no reason at all. See *Irwin* v. *Ware,* 392 Mass. 745, 773 (1984); *Mercy Hosp.* v. *Rate Setting Comm'n,* 381 Mass. 34, 42 (1980); *Allen* v. *Commissioner of Corp. & Taxation,* 272 Mass. 502, 504 (1930); *Diamond Crystal Salt Co.* v. *P.J. Ritter Co.,* 419 F.2d 147, 148 (1st Cir. 1969).

We thus conclude that the second sentence of the fourth paragraph of G. L. c. 40A, § 6, does not require that the plan of the lots in question be recorded or endorsed before January 1, 1976. We also conclude that for lots to be entitled to a five-year exemption from the requirements of a zoning amendment, pursuant to the second sentence of the fourth paragraph of G. L. c. 40A, § 6, the plan showing the lots must have been endorsed or recorded before the effective date of the amendment.

*Judgment affirmed.*