NANTUCKET CONSERVATION FOUNDATION, INC. vs.
RUSSELL MANAGEMENT, INC.

Nantucket. December 3, 1979. — March 25, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*Statute,* Retrospective statute. *Due Process of Law,* Retrospective statute. *Constitutional Law,* Taking of property. *Real Property,* Easement, Installation of utility lines.

The provisions of G. L. c. 187, § 5, are to be given retrospective effect. [214-215]

The owner of property holding an easement for ingress and egress along an abutting private way across land owned by the Nantucket Conservation Foundation, Inc., was entitled, pursuant to G. L. c. 187, § 5, to install underground utility lines beneath the surface of the way; the provisions of c. 187, § 5, as applied in this case, were constitutional. [215-218]

CIVIL ACTION commenced in the Land Court Department on August 18, 1978.

The case was heard by *Sullivan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Donald L. Connors (Terrance J. Hamilton* with him) for the plaintiff.

*Eugene L. Tougas* for the defendant.

*Howard R. Palmer,* Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

ABRAMS, J. At issue is whether G. L. c. 187, § 5,[1] applies retrospectively so as to allow Russell Management, Inc.

---

[1] General Laws c. 187, § 5, as appearing in St. 1975, c. 610, provides: "The owner or owners of real estate abutting on a private way who have by deed existing rights of ingress and egress upon such way or other pri-

(Russell), to install underground utility lines beneath the surface of land owned by the Nantucket Conservation Foundation, Inc. As the owner of property ("Lot H") on the island of Nantucket, Russell enjoys, by deed, an easement for ingress and egress along a fifty foot wide private way across the Foundation's land. General Laws c. 187, § 5, provides, in part, that the "owner . . . of real estate abutting on a private way who [has] by deed existing rights of ingress and egress upon such way . . . shall have the right by implication" to install, subject to certain conditions, gas, telephone, and electrical service along the way.

The Foundation commenced this action in the Land Court, pursuant to G. L. c. 231A, § 1, and G. L. c. 185, § 1(k), seeking a declaration (1) that G. L. c. 187, § 5, applies prospectively only, or, alternatively, (2) that, if read to apply retrospectively, the statute as applied constitutes a taking of the Foundation's property in violation of both the Federal and State Constitutions.

The Land Court judge found G. L. c. 187, § 5, to be both retrospective and constitutional, and declared that the statute entitled Russell to install utilities in the right of way. The Foundation appealed, and the case is before us for di-

---

vate ways shall have the right by implication to place, install, or construct in, on, along, under and upon said private way or other private ways pipes, conduits, manholes and other appurtenances necessary for the transmission of gas, electricity and telephone service, provided such facilities do not unreasonably obstruct said private way or other private ways and provided that such use of the private way or other private ways does not interfere with or be inconsistent with the existing use by others of such way or other private ways; and provided further that such placement, installation, or construction is done in accordance with regulations, plans and practices of the utility company which is to provide the service. Any such owner or owners may grant permission to a public utility company or companies to enter upon said way or other private ways to place, install, repair or relocate pipes, conduits, manholes, and other necessary appurtenances for the transmission of gas, electricity or telephone service in accordance with such company or companies regulations, practices and tariffs filed with the department of public utilities. Neither the person installing or repairing public utility facilities, nor such facilities, nor the gas, electricity or telephone service transmitted shall be deemed to constitute a trespass upon said way or ways."

rect review on our own motion. Deciding only the validity of the statute as applied in this case to permit the installation of underground utility lines, we affirm.

Russell, a Massachusetts business corporation, has received approval from the Nantucket planning board of a definitive subdivision plan dividing a parcel of land (Lot H) into thirty-six one-and-one-quarter acre house lots. See G. L. c. 41, §§ 81K-81GG.

Lot H is bounded on three sides by land owned by the Foundation, and on the fourth by a fifty foot wide private way. This way, in addition to bordering Russell's land, extends across Foundation property to a public road, and provides the only access to Lot H. The fee of the way is held by the Foundation, save for that half of the width of the way which abuts Lot H. By deed, Russell enjoys an easement across the way for ingress and egress only. *Nantucket Conservation Foundation, Inc.* v. *Russell Management, Inc.*, 2 Mass. App. Ct. 868 (1974).[2]

1. *Retrospective effect.* As a general rule, statutes operate prospectively unless a contrary legislative intent is clearly shown. *Yates* v. *General Motors Acceptance Corp.*, 356 Mass. 529, 531 (1969). *Welch* v. *Mayor of Taunton*, 343 Mass. 485, 487 (1962). Additionally, "[i]t is well settled that when a statute is construed, its words are to be given their usual and ordinary meaning considered in light of the aim to be accomplished by the Legislature." *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 546 (1976). The words of a statute are the prime indicator of its meaning.

The statute provides that property owners abutting a private way who have "existing" rights of ingress and egress "shall have" the right to install gas, telephone, and electrical service along the way. This right, furthermore, is spe-

---

[2] The Appeals Court held, in a decision reached without regard to G. L. c. 187, § 5, that the easement appurtenant to Lot H did not include the right to install utilities along the way. The version of G. L. c. 187, § 5, in effect at the time of the Appeals Court decision created an implied easement for gas lines only, and was not at issue before the court. See note 3, *infra*.

cifically made subject to a proviso that the installation of these utilities must not interfere with the "existing use" of the way by others. Finally, the statute as originally enacted contained an emergency preamble making its provisions effective immediately; this preamble indicates that the statute's "purpose . . . is to authorize immediately the installation of certain public utility services on certain private ways." St. 1973, c. 918.[3]

In light of these provisions, we conclude that the plain meaning of the words used by the Legislature evidences an intent to make G. L. c. 187, § 5, retroactive. Therefore, the statute applies to the easement appurtenant to Russell's land. The remaining question is whether the particular retrospective application of the statute at issue here exceeds constitutional limitations.

2. *Constitutionality.* Under the due process clause of the Fourteenth Amendment to the Federal Constitution and the cognate provisions of the State Constitution,[4] "[o]nly those [retroactive] statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 189-190 (1978). In a particular case, we apply a "test of reasonableness," *id.*, which seeks to determine "whether it is equitable to apply the retroactive statute against [those challenging the statute]" by examining (1) "the nature of the public interest which motivated the Legislature to enact the retroactive statute";

---

[3] As originally enacted, G. L. c. 187, § 5, created an implied easement for gas lines only. St. 1973, c. 918. While the 1975 amendment extending the statute's reach to cover telephone and electrical service in addition to gas was made effective ninety days after its enactment, St. 1975, c. 610, we do not think that this normal legislative practice in any way negates the intent evidenced in the statute as a whole that its provisions have retrospective effect. We will not ascribe to the Legislature an intent to obtain the incongruous result of retrospectivity as to gas lines alone.

[4] "Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12, of its Declaration of Rights, are the provisions in our Constitution comparable to the due process clause of the Federal Constitution." *Pinnick* v. *Cleary*, 360 Mass. 1, 14 n.8 (1971).

(2) "the nature of the rights . . . affected retroactively"; and (3) "the extent or scope of the statutory effect or impact." *Id.* at 191.

Moreover, in making each of these three inquiries, we are guided by the principle that those challenging the statute carry a heavy burden, and "[e]very rational presumption is indulged in favor of the validity" of the statute. *Id.* at 190, quoting from *Campbell* v. *Boston,* 290 Mass. 427, 429 (1935). The retrospective statute must be examined "to determine whether the legislation was 'reasonable' from any rational view the Legislature might have taken of the circumstances [which led to the statute's enactment]." *Id.* at 189.

We evaluate G. L. c. 187, § 5, in light of these principles and have no difficulty in holding the statute, as applied in this case, to be constitutional.

a. *Nature of the public interest.* "Legislation is to be considered in the light of existing conditions." *Commonwealth* v. *Rivkin,* 329 Mass. 586, 588 (1952). The common law rule at the time the Legislature enacted G. L. c. 187, § 5, held that the general grant of a right of way without more created only a right of ingress and egress, *Crullen* v. *Edison Elec. Illuminating Co.,* 254 Mass. 93 (1925), and did "not include the right to lay pipes or to erect structures in or upon the way." *Ward* v. *McGlory,* 358 Mass. 322, 325 (1970), quoting from *Ampagoomian* v. *Atamian,* 323 Mass. 319, 322 (1948).

The Legislature could justifiably have concluded that while this rule of law may have been adequate at a time when utilities were unknown and the full use of property demanded only the ability to gain physical access to it, the common law rule ignores the essential role certain basic utilities play today in facilitating the use and enjoyment of land. Access to adequate utilities might also have been thought necessary for public safety, as evidenced, for example, by the importance of telephone service in dealing with a police, fire, or medical emergency. "We live in a changing world where the law must respond to the demands of a

modern society." *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 218 (1975).

The Legislature could well have found that enactment of G. L. c. 187, § 5, was necessary to assure the safe and appropriate use of land. "The Legislature possesses a large measure of discretion to determine what the public interests require and what means should be taken to protect those interests. The field for the legitimate exercise of the police power is coextensive with the changing needs of society." *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life*, 319 Mass. 301, 304-305 (1946).

b. *Nature of the rights affected.* The right affected by G. L. c. 187, § 5, is, of course, the right of a landowner to control the use of his land. We in no way demean the importance of this right by describing as legion those instances in which property rights have been abridged without compensation by valid exercises of the Legislature's police power. See, e.g., *Smith* v. *New England Aircraft Co.*, 270 Mass. 511, 522-524 (1930), and cases cited.

In short, abridgement of a property right does not mandate, per se, that retrospective application of G. L. c. 187, § 5, be declared "unreasonable," since "the same Constitutions that create [such a] right leave it vulnerable to qualification or restriction by any valid exercise of the Legislature's police power." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 372 (1979).

Furthermore, the nature of the specific property rights at issue here undercuts the Foundation's claim that the statute is unreasonable. The Foundation's rights in the way were grounded on a rule of common law and therefore carried with them implicit notice that they might be modified in the face of changing conditions. "Changed conditions . . . require that the common law within the limits of the Constitution shall adapt its principles to meet present needs." *Commonwealth* v. *Gallo*, 275 Mass. 320, 334 (1931).

c. *Statutory effect.* Finally, in terms of its actual effect in abridging the Foundation's property rights, the statute

also does not appear to be unreasonble. The Foundation argues that the statute allows Russell to engage in a "physical invasion" of its property. Cf. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978) ("A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good"). *United States v. Causby*, 328 U.S. 256, 264-265 (1946) (overflight constitutes "invasion"). *Opinion of the Justices*, 365 Mass. 681, 689 (1974) (free right of passage on foot between mean high water line and extreme low water line constitutes "permanent physical intrusion").

The present case, however, is radically different from those in which a statute authorizes an "invasion" into land where no previous access has been allowed. By deed alone, Russell already enjoyed, prior to the enactment of the statute, an extensive ability to "invade" the Foundation's land. Russell could traverse the Foundation's property. It could use the way to send in the heavy construction equipment required to build thirty-six houses planned for Lot H. Russell, furthermore, enjoyed the right to make physical changes to the way in order to prepare it for these uses, *Guillet v. Livernois*, 297 Mass. 337, 339-341 (1937), and has done so, laying a gravel surface road over the way.

The statute itself, furthermore, imposes a rule of reasonableness on the use of a way for utility lines. The statute insists that the utilities it authorizes must be installed so as not to obstruct the way "unreasonably" or even be "inconsistent" with others' existing use of the way. Significantly, Russell plans to install its lines entirely underground. The actual burden on the Foundation's property rights imposed by G. L. c. 187, § 5, is thus far less onerous than other regulatory effects we have upheld as valid exercises of the police power. See, e.g., *Turnpike Realty Co. v. Dedham*, 362 Mass. 221, 235-237 (1972) (flood plain zoning), and cases cited.

Since we construe the statute to be retrospective and find it constitutional as applied, we need not reach the issue of the continued validity in this jurisdiction of the common law rule that the general grant of a right of way does not carry with it the right to make reasonable use of the way in order to gain underground access to utility services. We shall not hesitate, however, in an appropriate case, to "inquire whether the traditional rule is suited to present conditions," *Secretary of the Commonwealth* v. *City Clerk of Lowell*, 373 Mass. 178, 185 (1977), with specific reference to the essential role utilities play in present day life, and the current ability to install such utilities entirely underground. "The general rules of the common law, founded as they are upon 'justice, fitness and expediency,' are designed to meet and be susceptible of being adapted 'to new institutions and conditions of society . . . [and to] new usages and practices, as the progress of society in the advancement of civilization may require.'" *Commonwealth* v. *Gallo*, 275 Mass. 320, 333 (1931), quoting from *Commonwealth* v. *Temple*, 14 Gray 69, 74 (1860). Cf. *Dowgiel* v. *Reid*, 359 Pa. 448, 460 (1948) (general grant of a right of way includes right to erect electric poles along way, since such use is "reasonable" "in this modern era"; additional burden on servient estate said to be "trifling"). *Davis* v. *Jefferson County Tel. Co.*, 82 W. Va. 357 (1918) (telephone poles).

*Judgment affirmed.*