THOMAS ROBINSON & others[1] *vs.* BOARD OF HEALTH OF CHATHAM & another.[2]

No. 01-P-1456.

Barnstable. February 13, 2003. - June 27, 2003.

Present: LAURENCE, GELINAS, & MILLS, JJ.

*Board of Health. Zoning,* Variance. *Sewer. Way,* Private.

In a civil action challenging the decision of a town's board of health to grant variances to a landowner that authorized him to construct a private septic system involving the placement of septic pipes under a considerable length of a private way that the landowner's property abutted, the judge properly granted the landowner's motions for judgment on the pleadings and partial summary judgment, where G. L. c. 187, § 5, authorized the installation of a private sewer system such as that contemplated by the landowner's proposal. [396-399]

CIVIL ACTION commenced in the Superior Court Department on December 31, 1999.

The case was heard by *Richard F. Connon,* J., on motions for partial summary judgment and for judgment on the pleadings.

*John P. McCormick* for the plaintiffs.

*Walter H. McLaughlin, Jr.,* for John J. Heavey, Jr.

*Bruce P. Gilmore* for Board of Health of Chatham.

LAURENCE, J. John J. Heavey, Jr., for several years has sought to develop certain lots located on a private way (Nantucket Drive) in Chatham. His efforts have met with implacable opposition by neighbors. Substantial litigation has ensued. This appeal arises out of his success in obtaining variances from the board of health of Chatham (the board) that authorized him to construct a private septic system. Most pertinently to this proceeding, the proposed system would involve the placement

---

[1]Joan Robinson, Robert Kolb, Rita Kolb, and Eugene A. Beliveau.

[2]John J. Heavey, Jr., also known as Jack Heavey.

of septic/sewage pipes (leading from a septic tank to a distribution box and leaching field) under a considerable length of the private way. Several owners of property abutting the private way (herein the plaintiffs) challenged the board's variance decision.[3] In a complaint filed in the Superior Court, they sought declaratory relief pursuant to G. L. c. 231A, certiorari relief pursuant to G. L. c. 249, § 4, and relief under G. L. c. 30A, "to the extent it applies."

A judge of the Superior Court, viewing the complaint as an action in the nature of certiorari,[4] granted Heavey's motions for judgment on the pleadings and partial summary judgment. The judge ruled that G. L. c. 187, § 5, governed the case and warranted the board, acting on substantial evidence in the record, to authorize the installation of the proposed sewer/septic system under the private way in accordance with the statutory conditions of nonobstruction and noninterference.[5]

---

[3]The board's variance decision also allowed Heavey to place the distribution box and leaching field on a lot owned by him that was not contiguous to the lot containing the house to be served and the septic tank to be built; and to place the edge of the system's "reserve discharge area" closer to the property line than otherwise permitted. The plaintiffs generally challenged all of the variances on procedural grounds but focused their principal attack on the authorization of the placement of sewer piping under the private way.

[4]The State Administrative Procedure Act (Act), G. L. c. 30A, does not apply to municipal and other local bodies such as a board of health, which are not "agencies" within the scope of the Act. G. L. c. 30A, § 1(2). See *Danusis* v. *Longo*, 48 Mass. App. Ct. 254, 260 (1999). Further, review of the decisions of a local authority, such as a board of health, which possesses "broad discretion . . . based on the strong public interest in protecting health and the environment" when it determines applications for variances for private sewage disposal systems under Title 5 of the State Environmental Code, 310 Code Mass. Regs. § 15.410 (1995), or under its own stricter sewage regulations, *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 627 (1989), as here occurred, is not properly by means of a claim for declaratory relief, but rather by either an appeal pursuant to 310 Code Mass. Regs. § 15.420 (2003), *id.* at 624-626; or an action in the nature of certiorari. See *Johnson Prods., Inc.* v. *City Council of Medford*, 353 Mass. 540, 545, cert. denied, 392 U.S. 296 (1968); *Bermant* v. *Selectmen of Belchertown*, 425 Mass. 400, 402-404 (1997). The existence of the available remedy of appeal under the provisions of Title 5 should have made certiorari inapplicable, see *Rosenfeld*, 27 Mass. App. Ct. at 626, but neither the parties nor the judge invoked or mentioned that avenue of relief.

[5]General Laws c. 187, § 5, provides: *"The owner* or owners *of real estate abutting on a private way who have by deed existing rights of ingress and*

Prescinding from several unmeritorious procedural contentions advanced by the plaintiffs,[6] their sole substantive argument

egress *upon such way* or other private ways *shall have the right* by implication *to place, install or construct in, on, along, under and upon said private way* or other private ways *pipes, conduits, manholes and other appurtenances necessary for the transmission of gas, electricity, telephone, water and sewer service, provided such facilities do not unreasonably obstruct said private way* or other private ways, *and provided that such use of the private way* or other private ways *does not interfere with or be inconsistent with the existing use by others of such way* or other private ways; and, *provided further, that such placement, installation, or construction is done in accordance with regulations, plans and practices of the utility company which is to provide the gas, electricity, or telephone service, and the appropriate cities, towns, districts, or water companies which provide the water service.* Said agencies, which provide such service, shall comply with the rules and regulations of the division of water supply and the department of telecommunications and energy. Any such owner or owners may grant permission to a public utility company or water company to enter upon said way or other private ways to place, install, repair, or relocate pipes, conduits, manholes, and other necessary appurtenances for the transmission of gas, electricity, telephone or water service in accordance with such company or companies regulations, practices and tariffs filed with the department of telecommunications and energy or the division of water supply; provided, however, that no charge or added assessment shall be levied by such public utility company or companies against any such owner or owners not connected to such service or services. Neither the person installing or repairing public utility facilities, nor such facilities, nor the gas, electricity, telephone or water service transmitted shall be deemed to constitute a trespass upon said way or ways." (Emphasis added.) See note 9, *infra*, for a brief legislative history of this statute.

The plaintiffs neither contest Heavey's status as an eligible "owner" under the statute, nor argue that his proposed sewer/septic system does not, except for its private rather than public nature, qualify as a "sewer service" covered by the statute. They also do not contend that Heavey fails to satisfy the statutory requirements that "such facilities do not unreasonably obstruct such private way . . . [or] interfere with or be inconsistent with the existing use by others of such way"; and do not challenge the judge's findings that, since the sewer piping will be completely underground, it will not (except briefly during construction) unreasonably obstruct the way or interfere with its use as a way by the plaintiffs.

[6]Only one of the alleged procedural defects raised by the plaintiffs merits even brief attention. The rest — the judge's denial of their motions for additional testimony and evidence; the supposed procedural irregularities by or before the board not apparent on the face of the administrative record; the alleged existence of disputed material facts arising from the denials of many complaint allegations in Heavey's answer; and the purported necessity for Heavey to have obtained additional variances that were never subject to application or decision — suffer from two defects. First, they are unsupported by coherent appellate argument buttressed by applicable legal authorities (see

requiring discussion[7] is that G. L. c. 187, § 5, authorizes only the installation of public utility services in private ways and does not comprehend a private sewer system such as that contemplated by Heavey's proposal. They support that position by pointing to the supposed statutory requirement that all "placement, installation or construction" under the statute must by "done in accordance with regulations, plans and practices of the [public] utility company." In this, they misread the statute.[8]

Aside from the fact that this court has already recognized the

Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]; *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 [1958]; *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 236 [1984]); and they are further inappropriate in a certiorari proceeding, which is decided solely on whether substantial errors of law or the absence of substantial evidence clearly appears on the face of the record and which does not admit of the presentation of additional evidence. See *Goldie's Salvage, Inc.* v. *Selectmen of Walpole*, 31 Mass. App. Ct. 726, 731, 733-734 (1992); *Police Commr. of Boston* v. *Robinson*, 47 Mass. App. Ct. 767, 770 (1999). The plaintiffs' assertion that the board's grant of the variances was arbitrary and capricious merely because it had earlier denied them (on the basis of a substantially different application) reflects the same defects. Their only procedural argument relying on cited case authority — that the board vote was invalid because one member in the majority had not attended all meetings — fails factually (on the record, the majority had been at every public hearing at which Heavey's application was discussed) as well as legally (the sole authority cited in support, *Mullin* v. *Planning Bd. of Brewster*, 17 Mass. App. Ct. 139, 141-143 [1983], being distinguishable, because in that case a sufficient number of voting members required to comply with the applicable statutory provisions had not attended any public hearings on the special permit).

[7]The plaintiffs' position that the board "lacks jurisdiction" to approve the Heavey plan to the extent it infringes on private property is an unsupported, conclusory assertion that they fail to develop; as is their argument that Heavey may not lawfully place a private sewer within a private way without securing an easement therefor from all the abutters of the way (the plaintiffs failing in particular to establish that they are entitled to the benefit of G. L. c. 183, § 58, which recognizes a fee interest to the center line of a private way in certain grantees of real estate abutting the way, depending on the language of the instrument passing title; see generally *Rowley* v. *Massachusetts Elec. Co.*, 438 Mass. 798 [2003]). See note 6, *supra*. The plaintiffs' contention that the board's authorization in reliance on Heavey's right under G. L. c. 187, § 5, was not supported by substantial evidence is belied by the record of the December 6, 1999, hearing before the board, at which relevant data sufficient to satisfy health-related issues and standards were presented. See the minutes of the board meeting of September 27, 1999, and note 5, *supra*.

[8]Before the Superior Court (though not here), the plaintiffs added an argument that the restriction of the statute to public utility services was manifest from its title, which reads, "Installation of public utility services for abutting

propriety of an abutting private landowner's installation of a sewer line under a private way pursuant to G. L. c. 187, § 5, see *Barlow* v. *Chongris & Sons, Inc.*, 38 Mass. App. Ct. 297, 298-299 (1995) (in that case, to connect to a public sewer), the plain words of the statute authorize a private landowner such as Heavey to "place, install or construct in, on, along, under and upon" the private way he abuts "pipes, conduits . . . and other appurtenances necessary for the transmission of . . . sewer service," so long as such facilities do not (as they do not here) unreasonably obstruct or interfere with the rights of others to use the way.

While the statute prudently requires that installations for the transmission of gas, electricity or telephone service be "done in accordance with regulations, plans and practices of the utility which is to provide . . . [such] service," and that facilities for the transmission of water be "done in accordance with regulations, plans and practices" of "the appropriate cities, towns, districts, or water companies which provide the water service," no similar qualification or proviso is mentioned for the construction or installation by a property owner of sewer service facilities.[9] The reason for the omission of a requirement of compliance with public utility or municipal water company standards for a private party's sewer service seems clear in a

owners on private ways authorized." The judge properly rejected that argument as inconsistent with the plain words of the statute (as discussed *infra*). See *Cumberland Farms, Inc.* v. *Milk Control Commn.*, 340 Mass. 672, 678 (1960). See also *Proprietors of Charles River Bridge* v. *Proprietors of Warren Bridge*, 7 Pick. 344, 454 (1829), aff'd, 36 U.S. 420 (1837) ("There is no rule in construing statutes better settled than that the title of an act does not constitute a part of the act"). To the extent the plaintiffs also rely on the pre-approval hearsay opinion of the manager of the Chatham water and sewer departments (an engineer, not a lawyer) that he "believe[d]" that G. L. c. 187, § 5, pertained only to the installation of public utilities, their reliance is manifestly misplaced and unavailing.

[9]The original legislation (St. 1973, c. 918) created an implied easement in the private way only for gas lines. It was amended two years later to add electrical and telephone service (St. 1975, c. 610), in 1980 to add water service (St. 1980, c. 251), and in 1988 to add sewer service (St. 1988, c. 334). The legislation created an implied easement in the abutting owner for such purposes because at common law the grant of a right of way without more created only a right of ingress and egress and did not include the right to lay pipes or erect structures in, upon or under the way. See *Nantucket Conservation Found., Inc.* v. *Russell Mgmt., Inc.*, 380 Mass. 212, 216 (1980).

State in which it is estimated that 650,000 homeowners have private sewage disposal systems that are not connected to public sewers.[10]

The Legislature enacted and amended the earlier versions of G. L. c. 187, § 5, in recognition of the need to update the common law to reflect the importance of utilities to modern society, while assuring public health and safety in connection therewith. See *Nantucket Conservation Found., Inc.* v. *Russell Mgmt, Inc.*, 380 Mass. 212, 216-217 (1980). The subsequent addition of authorization for the construction of sewer service along or under private ways similarly appears responsive to the "essential role [private sewer systems] play today in facilitating the use and enjoyment of land" that does not have the benefit of public sewer service. *Id.* at 216.

The omission from the statute of a requirement of compliance with public utility standards for private sewer service does not, of course, mean that the implementation of such service is free of regulation in the public interest. The statute itself "imposes a rule of reasonableness" for such projects, *id.* at 218, and all such systems are — as evidenced by the very proposal at issue here — subject, in the interests of public health and safety, to municipal health regulations and the requirements of Title 5 of the State Environmental Code, 310 Code Mass. Regs. §§ 15.00.

Even were such regulatory compliance not mandated for a private sewer system, it would be inappropriate to read into the statute a requirement of compliance with public utility standards analogous to those applicable to gas, electric, telephone, and water services when such a requirement has been conspicuously omitted by the Legislature with respect to sewer service. See *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914); *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982); *Massachusetts Med. Soc.* v. *Commissioner of Ins.*, 402 Mass. 44, 63 (1988); *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 8-9 (1998).

Accordingly, we affirm the Superior Court judge's affirmance

[10]See Note, Flushing Money Down the Drain: Environmental Regulatory Takings and Title 5 of the Massachusetts State Environmental Code, 32 Suffolk U. L. Rev. 663 (1999).

of the board's granting of the challenged variances to Heavey and the entry of judgment in his favor.

*So ordered.*