NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-607

CAROLINE YOUNG & others[1]

vs.

TOWN OF LEE & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, residents and registered voters of the defendant town of Lee, appeal from a Superior Court judgment dismissing, for failure to state a claim on which relief could be granted, their complaint against the town and the members of its selectboard.[3] The complaint challenged the selectboard's approval, without town meeting's consent, of a settlement agreement with the General Electric Company (GE) allowing the siting of a disposal facility in the town to accept waste from

---

[1] Andrea Wadsworth, James Castegnaro, and Clare Lahey.
[2] Selectboard members Patricia Carlino, David Consolati, and Thomas Wickham.
[3] The operative pleading was the second amended complaint, which for convenience we refer to herein as the complaint. We further note that three of the plaintiffs were also members of the town's representative town meeting.

GE's cleanup of parts of the Housatonic River it had polluted with polychlorinated biphenyls (PCBs).

Our role is not to determine whether the process the selectboard followed in entering the settlement was a good one, or whether entering the settlement was wise as a policy matter. Those are issues for the town's voters and elected officials, not for the courts. Our role is to review whether the plaintiffs have a plausible claim that the selectboard acted illegally. We conclude that a town bylaw authorized the selectboard to approve the settlement agreement and that the plaintiffs' claim that the selectboard abused its discretion was not properly before the court. We therefore affirm the judgment.[4]

Background. The complaint alleged that the town is part of the Rest of River Committee (committee), a group of municipalities affected by GE's pollution of the Housatonic River. In January 2020, after mediation, GE entered into a settlement agreement with the United States Environmental Protection Administration (EPA), the members of the committee, and various other interested parties. The agreement, as most relevant here, allowed the siting of a PCB waste disposal

---

[4] We acknowledge the amicus brief filed by the town of Lenox, another party to the settlement agreement, in support of the defendants.

2

facility in the town. The agreement further bound the town not to challenge the terms of a certain cleanup-related permit to be issued by the EPA, provided those terms were consistent with the agreement.  The town would receive $25 million in compensation from GE.[5]  The agreement required approval from the town.  The selectboard, meeting in executive session and without having obtained the consent of town meeting, approved the agreement, and the selectboard's chair signed it.

The plaintiffs then commenced this action against the town and the selectboard, claiming that the approval (1) violated the open meeting law (OML); (2) violated town bylaw section 43-2 governing settlement of claims and suits; (3) violated G. L. c. 40, § 4, governing the towns' power to enter contracts; and (4) was an abuse of the selectboard's discretion.  On the defendants' motion to dismiss for failure to state a claim, a judge issued a thoughtful memorandum of decision concluding that, even taking all of the complaint's factual allegations as true, the selectboard's actions did not violate the OML; were authorized by section 43-2; were consistent with G. L. c. 40, § 4, and related statutes; and were not an abuse of discretion.

---

[5] The $25 million amount is alleged in the complaint.  The agreement attached to the complaint appears to require GE to pay a total of $55 million for the town and four other towns to "distribute among themselves."

Judgment entered dismissing the complaint, and the plaintiffs appealed.

Discussion. We review the sufficiency of the plaintiffs' complaint de novo, taking as true its factual allegations and drawing all reasonable inferences in their favor. See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Id., citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008). On appeal, the plaintiffs have not pressed their OML claim, and so we do not consider it. Nor have they made any independent argument regarding G. L. c. 40, § 4, instead merely quoting it in a footnote in connection with their claim under section 43-2.[6] We therefore focus on the section 43-2 and abuse of discretion claims.[7]

---

[6] General Laws c. 40, § 4, provides in pertinent part that a "town may make contracts for the exercise of its corporate powers, on such terms and conditions as are authorized by the town meeting." The judge ruled that the town's power to enter settlement agreements is governed instead by G. L. c. 40, § 2, and the plaintiffs do not argue that the judge erred in so ruling.

[7] At oral argument, there was discussion of whether the town has any obligations left to perform under the agreement, or whether instead the case might be moot. At a minimum, the agreement requires the town to mediate and then arbitrate any disputes regarding GE's responsibility to repair any roads or other infrastructure damaged during remediation activities. We conclude that the case is not moot.

4

1.  Section 43-2.  Section 43-2 of the town bylaws, adopted by town meeting in 1971 and entitled "Settlement of claims," provides as follows:

> "The Selectmen may, at their discretion, compromise or settle any claim or suit to which the Town is a party which does not require payment by the Town of an amount in excess of $1,000.  No settlement of a claim or suit obligating the Town in an amount in excess of $1,000 shall be made, except as authorized by law, without consent of the Town Meeting."[8]

As the parties recognize, section 43-2 must be read together with section 43-1, adopted by town meeting at the same time as section 43-2 and entitled "Selectmen to be legal agents of Town," which provides as follows:

> "The Selectmen shall be agents of the Town to institute, prosecute and defend any and all claims, actions and proceedings to which the Town is a party or in which the interests of the Town are or may be involved."

"We determine the meaning of a bylaw by the ordinary principles of statutory construction" (quotation and citation omitted). Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 477 (2012).

a.  Town as plaintiff.  The plaintiffs argue that section 43-2 applies only to a claim or suit in which the Town is a

---

[8] Although section 43-2 and the other bylaws discussed infra were not introduced in evidence in the Superior Court, the defendants acknowledged at oral argument that the text of the bylaws reproduced in an addendum to the plaintiffs' brief is accurate. We need not address whether the bylaws are judicially noticeable.  Cf. Lee v. Cai, 102 Mass. App. Ct. 491, 498 n.8 (2023); Doe v. Cambridge Pub. Sch., 101 Mass. App. Ct. 482, 486 n.3 (2022).

5

defendant or may be liable to another party, not to claims in which the town is or may be a plaintiff. Because the agreement at issue here did not settle any claim of liability against the town, the plaintiffs assert that section 43-2 conferred no authority on the selectboard to enter the agreement.

The plain language of section 43-2, however, contains no such limitation to claims or suits against the town. Rather, its first sentence authorizes the selectboard to settle "any claim or suit to which the Town is a party which does not require payment by the Town of an amount in excess of $1,000" (emphasis added). "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive" (citation omitted). Hollum v. Contributory Retirement Appeal Bd., 53 Mass. App. Ct. 220, 223 (2001). See Bank of New York Mellon v. King, 485 Mass. 37, 46 (2020). The plaintiffs do not dispute that the settlement agreement involves a claim or suit to which the town is a party,[9] nor do they dispute that the agreement "does not require payment by the Town of an amount in excess of $1,000." The plain language of the first sentence of

---

[9] The plaintiffs' brief argues that in the mediation with GE and others, the town "was a plaintiff, not a defendant." That aside, the town could have been a party to an appeal of the permit to be issued by the EPA; under the agreement, however, the town gave up any claim it could bring to invalidate that permit, unless it was inconsistent with the agreement.

6

section 43-2 thus authorized the selectboard to enter the agreement.

The plaintiffs nevertheless argue that a comparison to section 43-1 demonstrates that section 43-2 does not authorize the selectboard to settle claims in which the town is a plaintiff or that the town is prosecuting.  Section 43-1 designates the selectboard's members as "agents of the Town to institute, prosecute and defend any and all claims, actions and proceedings to which the Town is a party or in which the interests of the Town are or may be involved" (emphasis added). The plaintiffs suggest that the omission of the words "prosecute" or "plaintiff" from section 43-2 shows that that latter section applies only where the town is a defendant or potentially liable party.

This reads too much into the different language of the two sections.  If town meeting in 1971 had intended to limit section 43-2 in the manner the plaintiffs now argue, town meeting could easily have used a phrase such as, "any claim or suit in which the Town is a defendant or potentially liable."  Instead, the first sentence of section 43-2 says, "<u>any</u> claim or suit to which the Town is a <u>party</u>" (emphasis added), without limitation as to the type of party.

b.  <u>"Main objective" of section 43-2</u>.  Continuing their effort to limit section 43-2's first sentence to matters in

7

which the town is a defendant, the plaintiffs argue that section 43-2's "main objective" is set forth in its second sentence, to which the first sentence is merely a limited exception. The second sentence prohibits the selectboard from entering a settlement "obligating the Town in an amount in excess of $1,000 . . . except as authorized by law, without consent of the Town Meeting." The plaintiffs view section 43-2 as directed solely to the settlement of small claims. They thus view section 43-2's first sentence, discussed above, as allowing the selectboard to settle only those claims that require payments by the town of up to $1,000.

That is not what the first sentence says, and we see no basis for giving either sentence of section 43-2 dominance over the other. Construing the bylaw in the same manner as a statute, we "look first and foremost to the language of the [bylaw] as a whole" (emphasis added), In re Grand Jury Subpoena, 447 Mass. 88, 90 (2006), without assuming that one sentence is to be given more weight than another. Moreover, section 43-2 is entitled "Settlement of claims," not "Settlement of small claims." The most natural reading of the section as a whole is that the first sentence allows the selectboard to settle any claim or suit if the settlement does not require payment by the town of an amount in excess of $1,000, and the second sentence prohibits the selectboard from settling a claim by obligating

8

the town in an amount in excess of $1,000, except as authorized by law or with the consent of town meeting.[10]

c. <u>Town's "obligation" under agreement</u>. The plaintiffs nevertheless insist that even if section 43-2 applies to proceedings in which the town could be a plaintiff, the second sentence of section 43-2 barred the selectboard from entering the agreement. The plaintiffs' theory is that by agreeing not to appeal the issuance of a permit for a PCB disposal facility in the town, the selectboard "obligat[ed] the [t]own in an amount in excess of $1,000," without legal authority or town meeting's consent. The plaintiffs argue that the siting of the facility will cause the town "significant and long-lasting socioeconomic damages," creating "an obligation . . . by the [t]own in excess of $1,000."

We are not persuaded. Even if the agreement caused the town or its residents to incur socioeconomic or other damages in an amount in excess of $1,000, the plaintiffs point to nothing in the agreement that obligates, requires, or commits the town to spend public funds or provide public services to compensate for or repair the damages. Nor do we see anything in the

---

[10] We reach this conclusion without any need to give deference to the selectboard's interpretation of the bylaw. Thus we need not address the plaintiffs' argument that the selectboard's interpretation is so absurd and unworkable that no such deference is due.

agreement that releases any claims the town or its residents might otherwise have against GE, or any other party, for damages resulting from the siting, construction, or operation of the facility.[11]

    d.  Legislative history of section 43-2.  The plaintiffs argue that what they see as the legislative history of section 43-2 supports their interpretation that it was intended solely to authorize the settlement of small claims.  Assuming without deciding that consideration of such history is appropriate here -- and that, although the plaintiffs did not raise the argument in Superior Court, it is not waived -- the argument is nevertheless unpersuasive.

    Citing the minutes of selectboard meetings from the months just before the 1971 adoption of section 43-2, the plaintiffs assert that the selectboard discussed three minor claims against the town, but that there was no existing mechanism to settle such claims without town meeting approval.  From this the plaintiffs infer that section 43-2 was adopted solely to authorize the selectboard to settle small claims against the

---

[11] At oral argument, counsel for the defendants stated that he was unaware of any language in the agreement constituting such a release.  Of course we do not reach any conclusive interpretation of the agreement in that regard; the point for present purposes is that the plaintiffs have nothing to support their claim that the settlement obligates the town in excess of $1,000.

10

town without town meeting approval, rather than to govern settlements more generally.

Although the plaintiffs' diligence in searching out these records is commendable, the records do not support their position. Only one of the three small claims mentioned in the minutes, from February 1971, was clearly asserted against the town. The two matters mentioned at the May 1971 meeting concerned claims that, while they may have arisen on town property, could as easily have been asserted against private parties -- evidently a town contractor and a restaurant owner. In any event, nothing in the minutes supports the plaintiffs' assertion that the selectboard lacked authority at that time to settle such claims without town meeting consent. Nor do the meetings show that section 43-2 was drafted in response to the particular claims discussed in the meeting minutes.[12] And even if that type of claim was part of the reason for the adoption of section 43-2, its plain language, as we have discussed above, is not limited to such claims.

---

[12] The May 17, 1971 minutes in which two small claims were mentioned also referred to specific articles on the warrant for an upcoming special town meeting. At first blush it seems reasonable to conclude that this was the special town meeting of May 26, 1971, at which the addendum to the plaintiffs' brief shows section 43-2 to have been adopted. If the warrant for that meeting was already set as of May 17, 1971, it is not immediately evident how small claims discussed at the meeting on that date could have been the impetus for consideration of section 43-2 only nine days later.

The plaintiffs also rely on another town bylaw, section 12-5, which was adopted at the same time as section 43-2. Under section 12-5, "No board or officer shall make any contract on behalf of the Town the execution of which shall necessarily extend beyond one year from the date thereof, except as otherwise provided by law, unless specific authority to do so has been given by vote of the Town." The plaintiffs assert that this language both (1) supports their conclusion that section 43-2 authorizes the selectboard itself to settle only relatively insignificant claims,[13] and (2) provides an independent ground for invalidating the selectboard's action here.

The plaintiffs did not make any argument based on section 12-5 in their complaint or in their presentation to the judge, and therefore the argument is waived and we need not consider it on appeal. See Albert v. Municipal Court of Boston, 388 Mass. 491, 493-494 (1983). In any event, as the Supreme Judicial Court said of a similar if not identical bylaw adopted by another town,

> "[t]he draft[ers] of the by-law apparently intended to express and adopt the settled construction of the statute of frauds, G.L. . . . c. 259, § 1, Fifth, by which the words 'an agreement that is not to be performed within one year' have been held to apply only to an agreement that

---

[13] The plaintiffs make a similar argument based on § 12-4, which requires a bond in the case of a "contract exceeding $1,000." Sections 12-4 and 12-5 have little bearing on the interpretation of section 43-2, which governs a more specific type of contract, i.e., a settlement agreement.

12

<u>necessarily</u> must require more than a year for performance"
(emphasis added).

<u>Marble</u> v. <u>Clinton</u>, 298 Mass. 87, 89 (1937).[14]  "The Statute of Frauds applies only to contracts which by their terms cannot be performed within the year.  It does not apply to contracts which may be performed within, although they may also extend beyond, that period" (quotation and citation omitted).  <u>Boothby</u> v. <u>Texon, Inc</u>., 414 Mass. 468, 479 (1993).  Here, although the settlement agreement's subject matter suggests that its full implementation by GE may as a practical matter take more than one year, the plaintiffs point to no provision of the agreement that by its terms requires performance -- particularly of obligations running between GE and the town -- to extend beyond one year.  The plaintiffs thus have not shown that section 12-5 barred the selectboard from entering the agreement.

2.  <u>Abuse of discretion</u>.  Finally, the plaintiffs argue that even if section 43-2 authorized the selectboard to enter into this type of agreement, the selectboard abused its discretion in entering into this particular agreement.  The judge reached the merits of this argument and ruled that the plaintiffs had not alleged any facts that, if proven, would

---

[14] The court in <u>Marble</u> did not quote the entirety of the Clinton bylaw at issue but described it as "requiring a vote of the town before a board makes a contract 'the execution of which shall necessarily extend beyond one year from the date thereof.'" <u>Marble</u>, 298 Mass. at 89.

13

amount to an abuse of discretion.  Although we could affirm the judgment on this ground, the plaintiffs' abuse of discretion claim also suffers from a more fundamental defect:  no statute authorized review for abuse of discretion in these circumstances.  See Rasheed v. Commissioner of Correction, 446 Mass. 463, 478 (2006) (appellate court may affirm correct judgment on any ground supported by record, even if not relied on by motion judge).

The plaintiffs argue that review for abuse of discretion is authorized by G. L. c. 30A, § 14 (7) (g).  That statute, however, provides for judicial review of certain decisions of State agencies; it does not authorize review of decisions of town boards.  See Robinson v. Board of Health of Chatham, 58 Mass. App. Ct. 394, 395 n.4 (2003).

The plaintiffs might have tried to obtain review under the certiorari statute, G. L. c. 249, § 4.  See Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 725, 728 (2016).  Among the other obstacles to such review, however, the plaintiffs did not commence this action within sixty days of the selectboard decision they wished to challenge, as G. L. c. 249, § 4, requires.  The selectboard is alleged to have made its decision in February 2020, yet the plaintiffs did not file their complaint until March 2021.  The late filing of a certiorari action requires its dismissal.  See McLellan v. Commissioner of

14

Correction, 29 Mass. App. Ct. 933, 934 (1990).  The plaintiffs'
claim that the selectboard abused its discretion therefore was
properly dismissed.

     Conclusion.  The judge was correct in ruling that the
plaintiffs' complaint must be dismissed for failure to state a
claim on which relief could be granted.

Judgment affirmed.

By the Court (Sacks,
  Brennan & D'Angelo, JJ.[15]),

*Anne M. Thomas*

Assistant Clerk

Entered: February 29, 2024.

---

[15] The panelists are listed in order of seniority.