**Ephraim A. ADAMOWICZ, et al., Plaintiffs, Appellants,**

v.

**TOWN OF IPSWICH, MASS., Defendant, Appellee.**

**No. 84–1525.**

United States Court of Appeals, First Circuit.

Argued Dec. 4, 1984.

Decided Sept. 12, 1985.

Douglas A. Randall, Quincy, Mass., with whom Christopher S. Pitt, Quincy, Mass., was on brief for plaintiffs, appellants.

Charles C. Dalton, Ipswich, Mass., for defendant, appellee.

Before BREYER and TORRUELLA, Circuit Judges, and MALETZ,* Senior Judge.

PER CURIAM.

Having obtained from the Supreme Judicial Court, 395 Mass. 757, 481 N.E.2d 1368

* Of the United States Court of International Trade, sitting by designation.

[see appendix], confirmation that the view of Commonwealth law set forth in *Sieber v. Gauthier*, No. 40548 (Mass.Super.Ct.) (Aug. 31, 1981), *aff'd sub nom. Sieber v. Zoning Board of Appeals of Wellfleet*, 16 Mass.App.Ct. 985, 454 N.E.2d 108 (1983), is indeed the law of the Commonwealth and recognizing defendant's obligation to follow that law, we agree with the district court that the Commonwealth has not unconstitutionally taken the appellant's property nor deprived it of property without due process of law. We affirm the district court's dismissal of the case basically for the reasons set forth in its opinion.

The judgment of the district court is *Affirmed.*

## APPENDIX

### EPHRAIM A. ADAMOWICZ & others [1] *vs.* TOWN OF IPSWICH.

Suffolk. May 7, 1985.—August 22, 1985.

Present: Wilkins, Liacos, Abrams, Nolan, & O'Connor, JJ.

*Zoning*, Lot, Exemption. *Statute*, Construction.

*Certification* of questions of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

*Douglas A. Randall* for the plaintiffs.

*Charles C. Dalton*, Town Counsel, for the defendant.

ABRAMS, J. We address three questions certified to this court by the United States Court of Appeals for the First Circuit,[2] pursuant to S.J.C. Rule 1:03, as amended, 382 Mass. 700 (1981). The Court of Appeals asks us to interpret the first sentence of the fourth paragraph of The Zoning Act, G.L. c. 40A, § 6 (1984 ed.), which exempts certain lots from increased zoning restrictions provided certain conditions are met, including the condition that the lot "at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land."

While this case was pending at the Federal District Court level, the Massachusetts Appeals Court affirmed a Superior Court holding that in the first sentence of the fourth paragraph of G.L. c. 40A, § 6, the word "recording" refers "to the most recent instrument of record prior to the effective date of the zoning change from which the exemption is sought." *Sieber v. Gauthier*, Superior Court No. 40548 (Aug. 31, 1981), aff'd sub nom. *Sieber v. Zoning Bd. of Appeals of Wellfleet*, 16 Mass.App. 985, 454 N.E.2d 108 (1983).

The following facts accompany the request for certification. The plaintiff Adamowicz and others own certain lots in Ipswich (town). These lots are not big enough to allow building under the town's restrictive zoning requirements. Before the enactment of The Zoning Act, G.L. c. 40A, by St.1975, c. 808, § 3, the plaintiffs could build on their lots because of "grandfather" provisions in the town's zoning by-law and in § 5A of the older version of G.L. c. 40A (as amended through St.1961, c. 435, §§ 1, 3). After Massachusetts enacted the

---

1. Mary T. Adamowicz, Elizabeth M. Fleming, John R. Fleming, Ann Gallo, Louis E. Gallo, Jr., Jo C. Garland, Philip J. Hansbury, Charles Lambros, trustee, Helen C. Lang, Robert M. Lang, Nancy Lee MacDonald, Armand Marcaurele, John H. Moore, James A. Nelson, Mary T. Nelson, Lillian T. Pacheco, Carole E. Phillips, Richard C. Phillips, A. Daniel Rubenstein, Delilah R. Rubenstein, Louis C. Schlaufman, John A. Thoren, Jr., Frank M. Torpezer, Shirley M. Torpezer, Lorraine F. Walsh, Thomas J. Walsh, Marvin Weiss, Vera J. Weiss, and Eva L. Wright.

2. The questions are as follows: (1) Does holding 1 [that the word "recording," as it appears in G.L. c. 40A, § 6, does not necessarily refer to the recording of a "plan"] correctly state the law of the Commonwealth?; (2) Does holding 2 [that it should be taken to refer "to the most recent instrument of record prior to the effective date of the zoning change from which the exemption is sought"] correctly state the law of the Commonwealth?; and (3) Does a lot meet the requirement set forth in the quoted statutory language if the most recent instrument of record prior to a restrictive zoning change reveals that the lot was separately owned, even though a previously recorded subdivision plan may reveal that the lot was at one time part of land held in common ownership?

1975 Zoning Act and the town amended its zoning law in 1977 so as to require larger minimum lot size, the town refused to give one or more of the plaintiffs permission to build houses on their lots. The town asserts that the 1975 Zoning Act deprived the plaintiffs of their "grandfather" rights because they do not meet all of the conditions contained in the statutory language.

The plaintiffs sued the town in Federal court under 42 U.S.C. § 1983 (1982), claiming that Massachusetts' deprivation of their pre-existing building rights "inversely condemned" their land, entitling them to an injunction or to damages. See *San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981). After the Massachusetts Appeals Court's decision in *Sieber v. Zoning Bd. of Appeals of Wellfleet, supra*, a judge of the Federal District Court concluded that Massachusetts law, as interpreted by *Sieber*, permitted the plaintiffs to build; thus, they could not assert a Federal claim of "taking," for nothing had been taken.[3] The plaintiffs' request for a mandatory injunction ordering building permits was denied by the Federal District Court judge on the basis of the *Sieber* decision. The town refused to issue the permits. The plaintiffs appealed.

In the appeal to the Court of Appeals, the town stated that its refusal to issue the permits rested on its view that, in *Sieber v. Zoning Bd. of Appeals of Wellfleet, supra*, the Massachusetts Appeals Court incorrectly interpreted the first sentence of the fourth paragraph of G.L. c. 40A, § 6.[4] The

town contends that the Legislature did not intend to provide broad "grandfather clause" protection under the relevant sentence of G.L. c. 40A, § 6. Thus, it claims that the language at issue does not protect owners of lots held in common at the time a deed or a plan on which they were shown was first recorded. The town concedes that under its interpretation the statutory language is meaningless because almost every lot in the Commonwealth was, at one time or another, part of a larger parcel of land that was later subdivided as shown on a recorded plan or a recorded deed.

The Court of Appeals determined that the town raised arguments of sufficient weight to make uncertain the proper interpretation of the statutory language in question and that authoritative resolution of that uncertainty would significantly affect the way in which it ought to decide the appeal before it. We proceed to address the three certified questions.

(1) Does the word "recording," as it appears in the first sentence of the fourth paragraph of G.L. c. 40A, § 6, necessarily refer to the recording of a "plan"?[5]

We begin our answers by observing that "[b]arrenness of accomplishment is not lightly to be imputed to the legislative branch of the government." *Selectmen of Topsfield v. State Racing Comm'n*, 324 Mass. 309, 314, 86 N.E.2d 65 (1949). See *Insurance Rating Bd. v. Commissioner of Ins.*, 356 Mass. 184, 189, 248 N.E.2d 500 (1969). Nor do we interpret a statute so as

---

3. The judge also decided that the town's delay and refusal to follow Massachusetts law requiring issuance of the building permits did not deprive the plaintiffs of any rights protected by 42 U.S.C. § 1983.

4. Since the *Sieber* decision, the town has refused to issue building permits to the plaintiffs, apparently on the mistaken belief that it is not governed by decisions of the Appeals Court. "It goes without saying that Appeals Court decisions may appropriately be cited as sources of Massachusetts law." *Ford v. Flaherty*, 364 Mass. 382, 388, 305 N.E.2d 112 (1973). "An intermediate court ... is a maker of law in the same sense as the supreme court." Kaplan, *Do Intermediate Appellate Courts Have a Lawmaking Function?*, 68 Mass.L.Rev. 10, 12 (1985). A

town or any other person affected by an Appeals Court decision is governed by the Appeals Court decision until and unless either that court or this court declares otherwise.

5. General Laws c. 40A, § 6, fourth par., 1st sentence (1984 ed.), provides: "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use *which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land,* conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage" (emphasis added).

to render it or any portion of it meaningless. See *Casa Loma, Inc. v. Alcoholic Beverages Control Comm'n*, 377 Mass. 231, 234, 385 N.E.2d 976 (1979). The construction of a statute which leads to a determination that a piece of legislation is ineffective will not be adopted if the statutory language "is fairly susceptible to a construction that would lead to a logical and sensible result." *Lexington v. Bedford*, 378 Mass. 562, 570, 393 N.E.2d 321 (1979), quoting *Bell v. Treasurer of Cambridge*, 310 Mass. 484, 489, 38 N.E.2d 660 (1941). *McCarthy v. Woburn Hous. Auth.*, 341 Mass. 539, 542, 170 N.E.2d 700 (1960). *Berube v. Selectmen of Edgartown*, 336 Mass. 634, 639, 147 N.E.2d 180 (1958).

The first sentence of the fourth paragraph of G.L. c. 40A, § 6, exempts certain lots from increased zoning restrictions if, among other conditions, the lot "at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land." In *Sieber v. Gauthier*, the judge of the Superior Court rejected the town of Wellfleet's argument that in that sentence the word "recording" necessarily refers to the recording of a plan. In the instant case neither party has argued that the word "recording" refers only to a plan. The town of Ipswich takes the position that "the words 'recording or endorsement whichever occurs sooner' ... refer to the *earliest recorded instrument* showing a lot as an identifiable separate entity" (emphasis added), and throughout its brief, the town refers to a plan or a

deed. The town thus does not rest its argument on the necessity of the word "recording" referring only to the recording of a plan. Generally an issue not argued is deemed waived. See Mass.R.A. P. 16(a)(4), as amended, 367 Mass. 921 (1975). We nonetheless respond to the first question posed by the Court of Appeals.

The Superior Court judge in *Sieber v. Gauthier* concluded that the first sentence of the fourth paragraph of § 6 does not necessarily refer to the recording of a plan, but rather, refers to the recording of any instrument, including a deed. We agree. General Laws c. 4, § 7 (1984 ed.), defines "recorded" as applying to "plans, deeds or other instruments affecting land." That section also provides that defined words "shall have the meaning herein given, unless a contrary intention clearly appears." *Id.* Because it is only after the plan is recorded that the lots are sold and deeds given to separate owners, see G.L. c. 183, § 6A (1984 ed.), we also conclude that the sentence at issue means the recording of any instrument, including a deed.[6]

(2) Does the first sentence of the fourth paragraph of G.L. c. 40A, § 6, refer to the most recent instrument of record prior to the effective date of the zoning change from which the exemption is sought?

The town argues that the common ownership requirement in the sentence at issue applies to the status of the lot as of the date that the first instrument on which the lot is shown is recorded. It maintains that

6. In his thoughtful and comprehensive memorandum, the Superior Court judge in *Sieber v. Gauthier* reasoned as follows: "A subdivision as it is defined by G.L. c. 41, § 81L, is the 'division of a tract of land into two or more lots.' Before the Subdivision Control Law took effect, such a division could be accomplished without review by local planning boards simply by recording a survey plan showing the newly created lots. Regardless of whether a subdivision plan was made before or after the Subdivision Control Law became effective, implicit in all such plans is the understanding that potential new lines of ownership are created in a tract of land so divided. There is no point in creating a plan of lots already separately conveyed. To interpret Section 6 to require separate ownership at the time of recording or endorsement of a plan

showing more than one lot is to render it meaningless because such a plan by its very nature implies that the lots created thereon are all initially in common ownership and then subsequently deeded to individual owners.

"The net result of interpreting Section 6 to require separate ownership at the time of recording or endorsement of a subdivision plan is to attribute a 'Catch-22' mentality to the Legislature's intent. One cannot have separate ownership before the plan because there must be a plan showing the tract of land so divided before lots may be separately deeded and owned. However, if there is such a plan, the separate ownership criteria of Section 6 would never be satisfied, even to subsequent individual lot owners, because initially all lots shown on the plan were commonly owned."

the *Sieber v. Gauthier* decision was in error in concluding that the common ownership requirement referred to the status of the lot at the time of the most recent instrument of record prior to the effective zoning change. We do not agree. The language used by the Legislature suggests that it is the status of the lot at the time it is recorded which is significant, rather than its status at the time that a plan on which it first appeared was recorded. Because, grammatically, the modifying phrase ["which at the time of recording or endorsement"] must refer to the last antecedent phrase ["a lot for single family ... residential use"], see *Moulton v. Brookline Rent Control Bd.*, 385 Mass. 228, 230–31, 431 N.E.2d 225 (1982); *Druzik v. Board of Health of Haverhill*, 324 Mass. 129, 133, 85 N.E.2d 232 (1949), the sentence means that the status of the lot immediately prior to the zoning change is controlling. The first recorded instrument on which the separate lot is shown is almost always a subdivision plan and by definition such a plan includes adjoining lots owned by the same person or entity; therefore, any other statutory construction would make the statute ineffective. We conclude that the statute looks to the most recent instrument of record prior to the effective date of the zoning change.

Our conclusion was prefigured in dicta from other cases. In *Sturges v. Chilmark*, 380 Mass. 246, 261, 402 N.E.2d 1346 (1980), a declaratory judgment was sought as to the effect of the phrase "adjoining land" contained in the exemption provided by G.L. c. 40A, § 6. As in the instant case, all of the *Sturges* lots were held in common ownership at the time the plan creating the lots was recorded. Although our discussion of the provisions of § 6 other than the meaning of "adjoining land" was dictum, we said, "Section 6 is concerned with protecting a once valid lot from being rendered unbuildable for residential purposes, assuming the lot meets modest minimum area ... and frontage ... requirements." *Sturges v. Chilmark, supra* at 261, 402 N.E.2d 1346. That language supports the construction that the status of ownership of a lot is determined as of the date of the zoning change.[7] Other decisions by this court and the Appeals Court also assume this interpretation, but did not base their conclusions on this ground. See *Warren v. Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 7–8, 416 N.E.2d 1382 (1981); *Girard v. Board of Appeals of Easton*, 14 Mass.App. 334, 336–37, 439 N.E.2d 308 (1982).

(3) "Does a lot meet the requirement set forth in the quoted statutory language if the most recent instrument of record prior to a restrictive zoning change reveals that the lot was separately owned, even though a previously recorded subdivision plan may reveal that the lot was at one time part of land held in common ownership?"

Because of our previous answers to questions one and two, the answer to question three is "yes." Our construction of the relevant sentence of G.L. c. 40A, § 6, is required not only by logical and reasonable statutory construction but also by the maxim that statutes are to be construed so as to avoid an unconstitutional result or the likelihood thereof. *Vaughan v. Max's Market, Inc.*, 343 Mass. 394, 397, 179 N.E.2d 226 (1961), and cases cited. *O'Malley v. Public Improvement Comm'n of Boston*, 342 Mass. 624, 174 N.E.2d 668 (1961). Amendments to statutes, especially those dealing with property, generally have prospective effect only. Our "general rule [is that] statutes operate prospectively unless a contrary legislative intent is clearly shown." *Nantucket Conservation Found, Inc. v. Russell Management, Inc.*, 380 Mass. 212, 214, 402 N.E.2d 501 (1980). The sentence at issue does not indicate a con-

7. There is other language in *Sturges v. Chilmark, supra,* however, which the town suggests supports the opposite conclusion: "The plaintiffs' lots would meet all the requirements for such an exemption under § 6, unless at the time of the recording of the plan, the lots were 'held in common ownership with any adjoining land.' G.L. c. 40A, § 6." *Id.,* 380 Mass., at 261, 402 N.E.2d 1346. In the *Sturges* case, the circumstances at the time of the recording of the plan and at the time of the zoning change were the same and nothing in that case depended on the issue argued here.

trary intent. Therefore, we read § 6, fourth par., first sentence, as having a prospective effect. Such a construction furthers the purpose of § 6, which is to protect once-valid buildable residential lots. See *Sturges v. Chilmark, supra,* 380 Mass., at 261, 402 N.E.2d 1346.

The answer to the first question certified to this court is that in the first sentence of the fourth paragraph of G.L. c. 40A, § 6, the word "recording" does not necessarily refer to a plan.

The answer to the second question is that compliance of a lot with the common ownership requirement in the relevant sentence of G.L. c. 40A, § 6, is determined by looking at the most recent instrument of record prior to the effective date of the zoning change from which the exemption is sought.

The answer to the third question is that a lot does meet the statutory requirements if the most recent instrument of record prior to a restrictive zoning change reveals that the lot was separately owned, even though a previously recorded subdivision plan may reveal that the lot was at one time part of land held in common ownership.