JAMES P. FERZOCO & others,[1] trustees, *vs.* BOARD OF APPEALS OF FAL-
MOUTH & another.[2] No. 89-P-845. November 13, 1990. *Zoning*, Lot site,
Exemption.

The plaintiffs, as trustees, are the owners of two adjoining lots, Nos. 174
and 175, on Cove Street in Falmouth, in a zoning district which has been
designated "Residential B." The lots were laid out in a plan recorded in
June, 1923. Each lot at all times has contained 14,000 square feet with a
frontage on Cove Street of 100 feet. In 1923, Falmouth had no zoning by-
law. Later, Falmouth by zoning by-law required a minimum lot size in a
Residential B district of 10,000 square feet, and in 1957 this was increased
to 20,000 square feet. However, by-law provisions of 1957 and 1961 had
the effect of exempting lots like the plaintiffs', recorded as early as 1923,
from the 20,000 square feet requirement. This "grandfathering" was with-
drawn by a repealer by-law of April, 1978. In April, 1978, Falmouth voted
to adopt what is now G. L. c. 40A. In 1984, a by-law increased the area
requirement for Residential B lots to 30,000 square feet.

In 1988, the plaintiffs applied for a building permit for each of the lots.
The Falmouth building commissioner refused the permits, and the refusal
was upheld unanimously by the Falmouth zoning board of appeals. On
plaintiffs' appeal to the Superior Court, a judge of that court allowed the
plaintiffs' motion for summary judgment and reversed the decision of the
board. The defendants, board and building commissioner, now appeal to
this court. We reverse the judgment of the Superior Court and reinstate
the decision of the board.

1. For the contention that they are entitled to build on each of the two
lots, now each 16,000 square feet short of the present zoning requirement,
the plaintiffs point to the fourth paragraph of § 6 of G. L. c. 40A, as
amended by St. 1979, c. 106, which we set out in full text:

"Any increase in area, frontage, width, yard, or depth requirements
of a zoning ordinance or by-law shall not apply to a lot for single
and two-family residential use which at the time of recording or en-
dorsement, whichever occurs sooner was not held in common owner-
ship with any adjoining land, conformed to then existing require-
ments and had less than the proposed requirement but at least five
thousand square feet of area and fifty feet of frontage. Any increase
in area, frontage, width, yard or depth requirement of a zoning ordi-
nance or by-law shall not apply for a period of five years from its
effective date or for five years after January first, nineteen hundred
and seventy-six, whichever is later, to a lot for single and two family
residential use, provided the plan for such lot was recorded or en-
dorsed and such lot was held in common ownership with any adjoin-

---

[1]Anthony G. Ferzoco and Edward A. Ferzoco.
[2]Building commissioner of Falmouth.

ing land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy-six, and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and seventy-five feet of frontage, and provided that said five year period does not commence prior to January first, nineteen hundred and seventy-six, and provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership. The provisions of this paragraph shall not be construed to prohibit a lot being built upon, if at the time of the building, building upon such lot is not prohibited by the zoning ordinances or by-laws in effect in a city or town."

It will be noted that by the first sentence, a single lot which when recorded or endorsed was not in common ownership with adjoining land, and conformed to "then existing requirements," and has at least 5,000 square feet of area and fifty feet of frontage, shall not be affected by any increase in the area, etc., requirements of a zoning ordinance or by-law. This amounts to perpetual exemption from more restrictive zoning for the single-lot owner and leaves the lot to that extent open to building. See *Sieber* v. *Zoning Bd. of Appeals of Wellfleet*, 16 Mass. App. Ct. 985 (1983).

The second, and crucial sentence, deals with a lot held in common ownership with adjoining land (but not with more than three lots in such ownership). Here the exemption has a limited predicate and is confined as to time. Omitting some detail, the provision is directed to a lot, with at least 7,500 square feet of area and seventy-five feet of frontage, which conformed to the "existing zoning requirements as of [January 1, 1976]." Such a lot is exempted from more restrictive zoning for a period of five years from the effective date of the restrictive zoning ordinance or by-law, or for five years from January 1, 1976, whichever is later.

The plaintiffs cannot claim the benefit of the foregoing second sentence of the fourth paragraph because on January 1, 1976, neither lot conformed to the zoning requirements of that date — neither contained the required 20,000 square feet of area. So the board correctly held. The plaintiffs argue that there was a kind of conformance with the zoning requirements because the lots were in grandfathered status on January 1, 1976. That is not the manifest meaning of the expression "*existing* zoning *requirements as of [January 1, 1976]*," especially as it is contrasted with the expression "*then existing* requirements" in the first sentence (emphasis supplied). There was no intention, we think, to pile one grandfathered period upon another: the five-year exemption added to the plaintiffs' grandfathered status as of 1976.

2. An alternative view also leads to a decision against the plaintiffs. If it be assumed (contrary to our conclusion above) that the lots, by reason of being grandfathered, could be thought to conform to zoning requirements

on January 1, 1976, then the first post-1976 restrictive by-law would be the by-law repealer of 1978, and the five year exemption would run only to 1983. There would be scant justification for the extreme result urged by the plaintiffs — to take the 1984 by-law as the first post-1976 restrictive by-law, so that the plaintiffs might build on each lot to 1989 (plus a possible extension to take account of the period of litigation).

3. Cited cases do not bear upon our decision. The case of *Sieber* v. *Zoning Bd. of Appeals of Wellfleet*, 16 Mass. App. Ct. 985 (1983), applied the first sentence of the fourth paragraph of § 6. In *Adamowicz* v. *Ipswich*, 395 Mass. 757 (1985), the question was the proper date for determining whether a lot was or was not held in common ownership for purposes of the fourth paragraph; and in *Baldiga* v. *Board of Appeals of Uxbridge*, 395 Mass. 829 (1985), the words "as of [January 1, 1976]" were held not to qualify the words "recorded or endorsed," but to qualify the immediately preceding words "conformed to the existing zoning requirements."[3]

The judgment appealed from is reversed, and judgment shall be entered declaring that the decision of the Falmouth zoning board of appeals upholding the denial of building permits was within the authority of the board.

*So ordered.*

*Edward W. Kirk* for the plaintiffs.
*Frank K. Duffy, Jr.*, for the defendants, submitted a brief.

---

[3]The board has indicated that it would be prepared to approve one building permit for the two lots combined as one. One might say that for the singular purpose of avoiding a building stalemate, the board would be regarding the properties as if they were a single lot to which the first sentence of the fourth paragraph of § 6 applied. *DiCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 313-314 (1989).