Giles, J.
Introduction
This is an appeal by the plaintiff, Dana B. Junior (“plaintiff’), filed pursuant to G.L.c. 40A, §17, from a decision of the Zoning Board of Appeals (“ZBA”) for the Town of Marshfield (“Town”) affirming a denial by the Town’s building inspector of the plaintiffs application for a building permit. The plaintiff asserts that the ZBA failed to reach a decision in accordance with certain provisions of G.L.c. 40A, §6 and the Marshfield Zoning Bylaws, thereby exceeding its authority and acting improperly (Count I), and that the ZBA relied upon an erroneous legal standard in making its determination (Count II). Furthermore, the plaintiff requests declaratory relief under G.L.c. 231A, §1 etseq., determining the status of his property and whether the building permit should issue to him (Count III). Finally, the plaintiff requests that a permanent injunction should enter against the Town’s building inspector enjoining and restraining him from failing to issue a building permit for the plaintiffs property (Count IV).
On April 5, 2004, the matter came on for a jury-waived trial on stipulated facts and exhibits.
Findings of Fact
Based upon the joint stipulation of facts and exhibits, and reasonable inferences drawn therefrom, the court makes the following findings of fact.
The plaintiff is the owner of property located on Edward Road, Marshfield, Massachusetts, and identified as Assessor’s Parcel L05-28-12 (“Property”). The defendant, Robert S. Wiley, is the building inspector for the Town of Marshfield (“Building Inspector”), while the remaining defendants are all members of the ZBA (collectively “defendants”).
In April 1947, the Property was identified in a plan entitled “Plan of Green Harbor Park, Marshfield, Mass” (“Plan”) as Lot 60, with a 5,500-square-foot land area and 50 feet of frontage. On April 25, 1947, the Plan was approved and endorsed by the Town Board of Survey; and on May 1, 1947, the Plan was recorded. From 1947 to December 3, 1956, the Property was held in common ownership with Lot 61, as designated in the Plan. At all times after the recording of the deed on December 3, 1956,[2] Lot 60 has been held in single ownership and not in common with any other contiguous lot of land.
On May 25,1956, a Special Town Meeting approved the inclusion of the following language to Article 4, Section 2, of the Town Zoning Bylaws.
In all [districts other than districts marked AA and Residence A] no dwelling shall be erected on a lot containing less than 10,000 square fret or less than 80 feet in frontage on the abutting street.
Any lot which was existing or laid out and approved by the Board of Survey prior to May 10, 1956, may still be built upon under the Bylaws as existing prior to that date.
On March 2, 3, 5 and 6, 1959, the Town voted to repeal all of the then existing Zoning Bylaws. Article Eight, Section 4 of the new set of Zoning Bylaws read as follows.
Any lot in any district containing not less than 5,000 square feet and 50 feet frontage on March 2, 1959, regardless of the abutting ownership, may be constructed upon and used for any purpose allowed in such District.
Article Five, Section l.c. of the new Zoning Bylaws also read as follows:
In a district marked Residence C (or Beach Area E, if used for residential purposes) no structure shall be erected on a lot containing less than 10,000 square feet and less than 80 feet in frontage on the abutting street.
*126 On March 13, 1961, the Town amended Article Eight, Section 4 of the Zoning Bylaws to read as follows.
All lots laid out and recorded prior to March 2, 1959, if held in single ownership can be built upon as long as they have 5,000 square feet or over and 50 foot frontage. Contiguous lots must be combined to meet the zoning of the area in which the parcel is located. Exceptions from the above are subdivisions in which the municipal services and roads have been constructed in accordance with the requirements in effect on March 2, 1959.
At a set of Special Town Meetings held on June 12, 13, 19, 21, 22, and 17, 1972, the Town again repealed the Zoning Bylaws in their entirety and adopted a new set of Zoning Bylaws. Under the new Bylaws, the Town adopted a new set of symbols to demarcate separate zoning districts, e.g., R-l, B-3, OP. Apart from various amendments not relevant here, the Zoning Bylaws adopted in 1972 are the same bylaws currently enforced by the Town.
The plaintiffs Property currently is located in the Residential, R-3 zone. Article Six, Section 6.10 of the current Zoning Bylaws sets the minimum area, frontage, width, yard, and depth requirements of the Residential R-3 zoning district as follows: lot area = 10,000 square feet; lot width and frontage = 80 feet; lot depth = 100 feet; front yard =15 feet; side yard =15 feet; rear yard = 30 feet. Article IX, Section 9.03, of the current Zoning Bylaws, entitled “Nonconforming Uses, Structures, and Lots,” states:
Section 9.03 Residential Lot of Record — Any lot lawfully laid out by deed duly recorded, or any lot shown on a recorded plan endorsed by the Planning Board pursuant to Section 81P or 81U of M.G.L.[c.] 41, which complies at the time of such recording with the minimum area, frontage, width, and depth requirements, if any, of the zoning bylaws then in effect, may be built upon for residential use provided it has a minimum area of 5,000 square feet and is otherwise in accordance with the provisions of Section 6 of the Zoning Enabling Act.
On July 20, 2001, the plaintiff, pursuant to the Residential Lot of Record exemption of G.L.c. 40A, §6 and Section 9.03 of the Town Zoning Bylaws, applied for a building permit to build a one-family detached dwelling on his Property. On August 15, 2001, the Building Inspector denied his application for a permit partly on the ground that the Property “is a 5,500 square foot lot located in the R-3 zone, which is undersized for the R-3 zone.” The Building Inspector further found that a July 30, 2001, letter from the Town Council[3] indicated that the Property was “held in contiguous ownership and is not entitled to the benefit of Section 9.03 of the Zoning Bylaw.”
The plaintiff filed a timely appeal of the Building Inspector’s denial of the permit with the ZBA under Article 10, §10.02 of the Town’s Zoning Bylaws. On November 13, 2001, the ZBA conducted a hearing on the appeal. On February 25, 2001, the ZBA unanimously denied the plaintiffs appeal, affirming the Building Inspector’s denial of the building permit and stating that the Property “does not meet the current zoning requirements in effect.” The ZBA upheld the Building Inspector’s conclusion that the Property did not qualify for an exemption under either G.L.c. 40A, §6 or Section 9.03 because “for a time [the property] was held in common ownership.” The present appeal ensued.
Standard of Review
When an appeal to a local zoning board is denied, an aggrieved party is entitled to seek judicial review of the decision pursuant to G.L.c. 40A, §17. Cumberland Farms, Inc. v. Planning Bd. of Bourne, 56 Mass.App.Ct. 605, 609-10 (2002). In such a case, “[t]he court shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require.” G.L.c. 40A, §17. On appeal to the Superior Court, the matter is heard de novo. Bicknell Realty Co. v. Bd. of Appeal of Boston, 330 Mass. 676, 679 (1953). “The decision of the board is no more than the report of an administrative body and on appeal has no evidentiaiy weight.” Devine v. Zoning Bd. of Appeals of Lynn, 332 Mass. 319, 321 (1955). The judge is required to make his/her own findings of fact, independent of any findings of the board, and to determine the legal validity of a zoning board’s decision. Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. 478, 485-86 (1999); Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass.App.Ct. 68, 72-75 (2003).
Areview of a board’s decision, “while based on de novo fact finding, is nonetheless ‘circumscribed . . . [and] cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.’ ” Davis v. Zoning Bd. of Chatham, 52 Mass.App.Ct. 349, 355 (2001), quoting Roberts, 429 Mass, at 486. So long as “any reason on which the board can fairly be said to have relied has a basis in the trial judge’s findings and is within the standards of the zoning by-law and The Zoning Enabling Act, the board’s action must be sustained regardless of other reasons which the board may have advanced.” S. Volpe & Co., Inc. v. Bd. of Appeals of Wareham, 4 Mass.App.Ct. 357, 360 (1976). See also Davis, 52 Mass.App.Ct. at 356 n. 11 (noting that the court’s “restrained standard of review [under G.L.c. 40A, §17] is an aspect of the overarching general principal of deferential judicial review of administrative decisions ...”).
Rulings of Law
In this request for judicial review pursuant to G.L.c. 40A, §17, the plaintiff primarily argues that the ZBA incorrectly concluded that his Property is ineligible for an exemption under either G.L.c. 40A, §6 or Section *127 9.03 of the Town Zoning Bylaws, on the grounds that the Property failed to meet the “common ownership” requirement contained in both provisions. This court, therefore, must make a de novo determination of whether the plaintiffs Property is exempted as a matter of law from the zoning requirements of the current Town Zoning Bylaws, under either the fourth paragraph of G.L.c. 40A, §6[4] or Section 9.03.
The fourth paragraph of G.L.c. 40A, §6, primarily was designed to protect certain lots intended for single- or two-family residential use from increases in various zoning requirements imposed by local zoning ordinances or bylaws. See Planning Bd. of Norwell v. Serena, 27 Mass.App.Ct. 689, 689-90 (1989). The purpose of G.L.c. 40A, §6 was “to freeze and minimize substandard lots,” Giovannucci v. Bd. of Appeals of Plainville, 4 Mass.App.Ct. 239, 242 (1976), while “protecting a once valid lot from being rendered unbuildable for residential purposes, assuming the lot meets modest minimum area ... and frontage ... requirements.” Adamowicz v. Town of Ipswich, 395 Mass. 757, 763 (1985), quoting Sturges v. Chilmark, 380 Mass. 246, 261 (1980). The statute reads, in pertinent part, as follows.
Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage. Any increase in area, frontage, width, yard or depth requirement of a zoning ordinance or by-law shall not apply for a period of five years from its effective date or for five years after January first, nineteen hundred and seventy-six, whichever is later, to a lot for single and two family residential use, provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of January first, nineteen hundred and seventy-six, and had less area, frontage, width, yard or depth requirements than the newly effective zoning requirements but contained at least seven thousand five hundred square feet of area and sevenly-five feet of frontage, and provided that said five year period does not commence prior to January first, nineteen hundred and seventy-six, and provided further that the provisions of this sentence shall not apply to more than three of such adjoining lots held in common ownership.
G.L.c. 40A, §6.
The first sentence of the fourth paragraph “exempts certain lots from increased zoning restrictions if, among other conditions, the lot ‘at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land.’ ” Adamowicz, 395 Mass, at 760, quoting G.L.c. 40A, §6 (emphasis in original). Thus, if the lot meets several other conditions, the owner is granted what “amounts to [a] perpetual exemption from more restrictive zoning for the single-lot owner and leaves the lot to that extent open to building.” Ferzoco v. Bd. of Appeals of Falmouth, 29 Mass.App.Ct. 986, 987 (1990).
If read literally, the first sentence of the fourth paragraph would be applicable only when ownership was separate at the time of the first recording or endorsement of a subdivision plan. Such an interpretation would render “the statutory language... meaningless because almost every lot in the Commonwealth was, at one time or another, part of a larger parcel of land that was later subdivided as shown on a recorded plan or recorded deed.” Adamowicz, 395 Mass, at 759. In Sieber v. Zoning Bd. of Appeals of Wellfleet the Appeals Court first recognized this anomaly, holding that the first sentence of paragraph four applied to property that was held in common ownership with adjoining land when first recorded on a plan filed in 1889, but which had been held at all times since 1891 in separate ownership from all adjoining land. Sieber v. Zoning Bd. of Appeals of Wellfleet 16 Mass.App.Ct. 985, 986 (1983). The Supreme Judicial Court subsequently adopted the reasoning of Sieber in Adamowicz, concluding that the first sentence of paragraph four necessarily “looks to the most recent instrument of record prior to the effective date of the zoning change.” Adamowicz, 395 Mass, at 762 (noting that “the sentence means that the status of the lot immediately prior to the zoning change is controlling”). See also Preston v. Bd. of Appeals of Hull 51 Mass.App.Ct. 236, 240 (2001).
The second sentence of the fourth paragraph of G.L.c. 40A, §6 exempts lots with at least 7,500 square feet of area and seventy-five feet of frontage, “provided the plan for such lot was recorded or endorsed and such lot was held in common ownership with any adjoining land and conformed to the existing zoning requirements as of January [1, 1976] . . .” G.L.c. 40A, §6. In Baldiga v. Bd. of Appeals of Uxbridge, the court held that the phrase “as of January [1, 1976]” only modifies the “existing zoning requirements” clause and not the “recorded or endorsed” clause. Baldiga v. Bd. of Appeals of Uxbridge, 395 Mass. 829, 833 (1985). The “common ownership” clause was not at issue in that case. Id. at 833 n.3. Recently, however, in Marinelli v. Bd. of Appeals of Stoughton, the Supreme Judicial Court made it clear in dicta that the common ownership requirement of the second sentence of the fourth paragraph does not look to the January 1, 1976, date but, rather, is to be “determined by looking to record ownership at the time of the effective date of the zoning change.” Marínelli v. Bd. of Appeals of Stoughton, 440 Mass. 255, 260 (2003) (noting that the second sentence “describes the common ownership requirement in the past tense: ‘provided [that] . . . such lot was held in common ownership’ ”); citing Adamowicz, 395 Mass, at 763.
*128 Accordingly, in order to ascertain whether the plaintiffs Property qualifies for a zoning exemption under either the first or second sentence of paragraph four of G.L.c. 40A, §6, the court first must determine whether the Property was held or not held in common ownership with adjoining land at “the time of the effective date of the zoning change.” The “effective date” of this zoning change is the date of the adoption of the zoning ordinance or bylaw that rendered the plaintiffs land nonconforming, thereby making it necessary for him now to seek an exemption under G.L.c. 40A, §6.[5]
On May 25, 1956, a Special Town Meeting adopted Article 4, Section 2, forbidding the erection of any dwelling in certain zoning districts, including the zone containing the plaintiffs Property, “on a lot containing less than 10,000 square feet or less than 80 feet in frontage on the abutting street.” This bylaw, however, was subsequently repealed in 1959. Similarly, while Article Five, Section l.c. of the 1959 Zoning Bylaws created nearly identical restrictions for property located in zone “Residence C,” the Property’s zoning district at the time, this bylaw also subsequently was repealed. It was not until 1972 that the Town adopted the set of zoning restrictions, as found in Article 6, Section 6.10, that currently prevent the plaintiff from building on his property and which compel him to seek an exemption under either G.L.c. 40A, §6 or Section 9.03. Because it is this particular zoning change that renders the plaintiffs lot nonconforming, the “effective date of the zoning change,” for purposes of G.L.c. 40A, §6, is June 1972. It is undisputed that, at all times after the recording of the deed on December 3, 1956, the Property has been held in single ownership and not in common with any other contiguous lot of land. Therefore, because the plaintiff did not hold his properly in common ownership in June 1972, he satisfies the “common ownership” requirement of the first sentence of paragraph four of G.L.c. 40A, §6. Accordingly, this court holds that the ZBA was incorrect, as a matter of law, in concluding that he had failed to meet the “common ownership” requirement of paragraph four of G.L.c. 40A, §6 simply because the Property at one time had been “held in common ownership.” See Adamowicz, 395 Mass, at 764 (holding that a lot will satisfy the common ownership requirement of the first sentence of paragraph four of G.L.c. 40A, §6 if the most recent instrument of record prior to a restrictive zoning change reveals that the lot is separately owned, even though a previously recorded plan reveals that the lot was at one time part of land held in common ownership).
In order to qualify for an exemption under G.L.c. 40A, §6, the plaintiff additionally must satisfy the remaining requirements of the first sentence of paragraph four of G.L.c. 40A, §6. To do so, the Properly must have both “conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifiy feet of frontage.” G.L.c. 40A, §6. As to the latter requirement, both parties have stipulated that the plaintiffs Property was 5,500 square feet and contained 50 feet of frontage in 1972. The requirement that the Property conform to “then existing requirements” is more complex, however. In 1972, immediately prior to the adoption of the current Zoning Bylaws, Article Five, Section l.c. forbade the erection of any structure in “Residence C,” the plaintiffs zoning district at the time, “on a lot containing less than 10,000 square feet and less than 80 feet in frontage on the abutting street.” However, during the same period, Article Eight, Section 4, also allowed “[a]ll lots laid out and recorded prior to March 2, 1959, if held in single ownership [to] be built upon as long as they Piad] 5,000 square feet or over and 50 foot footage.” As of March 2, 1959, the plaintiffs lot was held in single ownership, was over 5,000 square feet, and had 50 feet of frontage. Therefore, immediately prior to the adoption of the new Zoning Bylaws in 1972, the Properly was exempted from the restrictions in Article Five, Section l.c. by the “grandfathering” clause found in Article Eight, Section 4. As such, the court finds that, in fact, the Property did conform to “existing [zoning] requirements” as they existed at the time of the effective date of the zoning change.
The defendants argue that the rationale of Ferzoco, 29 Mass.App.Ct. at 987, precludes the plaintiff from depending on the grandfathering clause found in Article Eight, Section 4 in order to qualify for an exemption under the first sentence of the fourth paragraph of G.L.c. 40A, §6. This argument is unavailing. In Ferzoco, the plaintiff argued that his property satisfied the “existing requirements” clause of the second sentence of the fourth paragraph of G.L.c. 40A, §6 on grounds that his property had been “grandfathered” through a bylaw in place as of January 1, 1976. Id. The court held that the plaintiff could not “pile” grandfathering clauses atop one another in order to satisfy the second sentence of the fourth paragraph of G.L.c. 40A, §6. Id. The Ferzoco court relied on “the manifest meaning of the expression ‘existing zoning requirements as of [January 1, 1976],’ especially as it is contrasted with the expression ‘then existing requirements’ in the first sentence.” (Emphasis in original.) IcL
Ferzoco is distinguishable from the instant action, however, in that Ferzoco dealt exclusively with the second sentence of the fourth paragraph of G.L.c. 40A, §6. The use of the phase “then existing” in the first sentence of the fourth paragraph of G.L.c. 40A, as opposed to the use of the phrase “existing” in the second sentence, evidences an intent by the legislature to allow property not held in common ownership at the time of the adoption of more restrictive zoning requirements to retain building rights more easily than those properties held in common ownership as of January 1, 1976. This conclusion is buttressed by the decision of the legislature to grant a “perpetual exemption” in G.L.c. 40A, §6 from further zoning restrictions to land not held in common ownership at the time of the adoption of more restrictive bylaws, as opposed to only granting a five-year exemption to land held in common ownership as of January 1, 1976.[6] Thus, the court determines that the *129 plaintiff properly relied on the grandfathering clause found in Article Eight, Section 4 in order to satisfy the “then existing requirements” clause of the first sentence of the fourth paragraph of G.L.c. 40A.
As a result, this court holds that the plaintiffs Property currently meets all of the requirements of the first sentence of paragraph four of G.L.c. 40A, §6 and, in turn, qualifies for the “perpetual exemption” from the Town Zoning Bylaws granted by the statute. Ferzoco, 29 Mass.App.Ct. at 987. Furthermore, the defendants having conceded in their brief that the requirements of Zoning Bylaw Section 9.03 essentially duplicate the requirements of G.L.c. 40A, §6,[7] the court rules that the Property additionally meets the grandfathering requirements of Zoning Bylaw Section 9.03, thereby entitling it to an exemption from the Town Zoning Bylaws, as detailed under Section 6.10.[8]
The plaintiff also has requested both declaratory and injunctive relief. The Supreme Judicial Court has held that, when a plaintiff seeks declaratory relief under the provisions of G.L.c. 231A, §1 in conjunction with an appeal pursuant to G.L.c. 40A, §17, “[r]egardless of its form, the plaintiffs action is an appeal within the meaning of G.L.c. 40A, §17 . ..” Iodice v. Newton, 397 Mass. 329, 334 (1986). It remains unclear, however, whether the proper action by a court in such a case is simply to dismiss arequest for declaratory relief under G.L.c. 231A §1 when brought in conjunction with an appeal under G.L.c. 40A, § 17 or, instead, to address it as part and parcel of the appeal under G.L.c. 40A, §17. Compare Wood v. Bd. of Appeals of Lexington, 2000 WL 1468860, *1 (Mass.App.Ct.) (holding that the plaintiff was permitted to bring claims under both G.L.c. 40A, §17 and G.L.c. 231A §1), with Strickler v. Movalli, 2 Mass. L. Rptr. 515, 1994WL879592, *3 (Mass.Super.Ct.) (Welch, J.) (holding that, because the plaintiff brought an action under G.L.c. 40A § 17, it was her exclusive remedy). This court agrees with the reasoning in Strickler and decides that, upon a plain reading of G.L.c. 40A, §17, the statute provides the plaintiff an exclusive remedy and, therefore, that he is barred from seeking relief under G.L.c. 231A 1.[9]
As to the plaintiffs request for a permanent injunction, the Superior Court is granted “jurisdiction to enforce the provisions of [Chapter 40A] . . . and may restrain by injunction violations thereof.” (G.L.c. 40A, §7 (emphasis added)). The court hereby exercises its discretion under Section 7 not to issue injunctive relief.
ORDER
For all the foregoing reasons, it is hereby ORDERED AND ADJUDGED that (1) the decision of the defendant Zoning Board of Appeals for the Town of Marshfield be ANNULLED; (2) the case be remanded to the Zoning Board of Appeals for the Town of Marshfield for further action not inconsistent with this opinion; (3) and the plaintiffs requests for declaratory relief and a permanent injunction be DENIED.

It has been stipulated that the recorded deed was dated November 13, 1956, but was not actually recorded until December3, 1956.

This letter has not been submitted as part of the record.

It is noteworthy that one commentator has concluded that, in construing the fourth paragraph of G.L.c. 40A, §6, the appellate courts have engaged in a measure of “judicial redrafting to evoke some meaning and purpose out of muddled and obscure language . . . [thereby] afford[ing] some protection in the face of puzzling legislative enactments.” Blaesser, ZONING FREEZES, §7.4, at 7-47 (MCLE Supp. 2002), citing Willard v. Board of Appeals of Orleans, 25 Mass.App.Ct. 15, 20 (1987) (characterizing unrelated portions of G.L.c. 40A, §6, as containing “an obscurity of the type which has come to be recognized as one of the hallmarks of this chapter”).

See Marinetti, 440 Mass, at 258 (identifying effective date of the zoning change as a 1996 amendment to town’s zoning bylaw that increased minimum lot size to 40,000 square feet for a R-15 zone, thereby preventing plaintiff from building on his 25,095 square foot lot); Adamowicz, 395 Mass, at 763 (“the status of ownership of a lot is determined as of the date of the zoning change”); Preston, 51 MassApp.Ct. at 240 (the “critical inquiry for grandfathering purposes is the status of the lot immediately prior to the zoning change that rendered the lot nonconforming”) (internal quotations omitted) (emphasis added).

Moreover, this decision adheres to the long-standing maxim that “[plurchasers of real estate are entitled to rely on the applicable zoning ordinances or by-laws in determining the uses which may be made of the parcel they are buying and of other parcels in the same neighborhood ... It is important that such purchasers be able to determine with reasonable accuracy, before making [the] investment, just what the applicable zoning ordinances and by-laws are, and what uses they permit or prohibit.” Vazza v. Bd, of Appeals of Brockton, 359 Mass. 256, 263 (1971).

The Town is permitted to adopt the provisions of Section 9.03 on the basis that paragraph four of G.L.c. 40A, §6 “provides only a floor and that a municipality is free to grant more liberal treatment to the owner of a nonconforming lot.” DeSalvo v. Chatis, Misc. Case No. 149615, at 7 (Land Ct. 1991). See also, e.g. Baldiga v Bd. of Appeals of Uxbridge, 395 Mass. 829, 834 (1985); Seltzer v. Bd, of Appeals of Orleans, 24 Mass.App.Ct. 521 (1987); Lee v. Bd. of Appeals of Harwich, 11 Mass.App.Ct. 148 (1981).

Section 9.03 of the Town Zoning Bylaws requires that a petitioner’s property be (1) lawfully laid out by deed duly recorded or shown on a recorded plan endorsed by the Marshfield Planning Board; (2) comply at the time of such recording with the minimum area, frontage, width, and depth requirements of the zoning bylaws in effect; (3) be used for residential purpose; (4) have a minimum of 5,000 square feet with frontage of at least 50; and (5) otherwise be in accordance with G.L.c. 40A, §6. As detailed above, the Property meets each of these requirements.

G.L.c. 40, §17 specifically states, in pertinent part, the following:
Any person aggrieved by a decision of the board of appeals . . . may appeal to the superior court department... by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk ... The foregoing remedy shall be exclusive . . . but the parties shall have all rights of appeal and exception as in other equity cases.
(Emphasis added.)