WILLIAM P. JOHNSON, trustee,[1] *vs*. BOARD OF APPEALS OF
ANDOVER & another.[2]

No. 09-P-1660.

Suffolk. May 6, 2010. - November 22, 2010.

Present: VUONO, WOLOHOJIAN, & HANLON, JJ.

*Zoning,* By-law, Lot size, Exemption. *Statute,* Construction. *Eminent Domain.*

A Land Court judge properly granted summary judgment affirming the denial
   by a town zoning board of appeals of a building permit for the construction
   of a single-family residence on a lot that, after a taking by the town, no
   longer conformed to the required minimum lot size under the town zoning
   bylaw, where the lot, which was shown on a plan endorsed and recorded
   after the taking, was not protected by the "grandfather" provision of G. L.
   c. 40A, § 6, fourth par., in that the statute only protected the lot from zoning
   amendments subsequent to the taking. [296-298]

CIVIL ACTION commenced in the Land Court Department on
February 23, 2006.

The case was heard by *Alexander H. Sands,* J., on a motion
for summary judgment.

*Donald F. Borenstein* for the plaintiff.

*Thomas J. Urbelis* for the defendants.

HANLON, J. The sole issue of consequence in this appeal is
whether the taking by eminent domain of a portion of a non-
conforming parcel destroyed the parcel's statutory exemption
from otherwise applicable changes in the town's zoning by-law.
See G. L. c. 40A, § 6, fourth par.[3] We agree with the Land

---

[1]Of Vale Realty Trust.

[2]Building inspector of the town of Andover.

[3]"Any increase in area, frontage, width, yard, or depth requirements of a
   zoning ordinance or by-law shall not apply to a lot for single and two-
   family residential use which at the time of recording or endorsement,
   whichever occurs sooner was not held in common ownership with any
   adjoining land, conformed to then existing requirements and had less

Court judge that, in the circumstances of the case, the grand-fathered status of the original parcel did not carry over to the lot that remained after the taking.

*Background.* The case is before us on appeal from a summary judgment, and the material facts are not in dispute. The plaintiff William P. Johnson is a developer who, in August, 2005, acquired the locus at issue, known as lot 38 on the Andover assessors' map. Lot 38 is unimproved and consists of 21,867 square feet of land, or about one-half acre. The property sits in a zoning district allowing single-family residential use as of right; however, the Andover zoning by-law currently requires a minimum lot size of 43,560 square feet (one acre) in that district. Lot 38 is therefore nonconforming and not buildable without relief from the lot size requirement by exemption, special permit, or variance.

Lot 38 historically was part of a larger parcel made up of several lots held in common ownership since the recording of an 1876 plan with the registry of deeds. In January, 1971, the town of Andover took by eminent domain, for school purposes, a portion of this larger parcel.[4] The pre-taking parcel measured 25,770 square feet in area; after the taking, the remainder, i.e., lot 38, totaled 21,867 square feet. The pre-taking parcel had complied with the applicable dimensional requirements of the Andover zoning by-law until at least 1955. By 1965, however, that parcel had become subject to the one-acre minimum that has since applied in the zoning district. We shall assume for decisional purposes that the pre-taking parcel was exempt (i.e., grandfathered) under G. L. c. 40A, § 6, fourth par., from this increase in the area requirement.[5]

Lot 38 has remained vacant and until recently was owned in common with a neighboring parcel improved with a single-

than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage. . . ."

G. L. c. 40A, § 6, fourth par., inserted by St. 1975, c. 808, § 3.

[4] The Andover planning board endorsed the plan of land taking on October 13, 1970. The order of taking was dated January 22, 1971, and was recorded that same day with the plan.

[5] It is undisputed that in this case the zoning by-law did not offer grandfather protection more generous than the statute.

family residence. The two parcels left common ownership in November, 2004, when lot 38 was deeded to Johnson's predecessor. In March, 2005, Johnson and the prior owner sought a building permit to construct a single-family residence on lot 38. In letters to Johnson in June and July of 2005, the Andover building inspector denied the permit on several grounds,[6] including that lot 38 lacked sufficient access and frontage under the by-law, and that the property did not qualify for grandfather protection.[7] On July 18, 2005, Johnson appealed the denial of the building permit to the Andover board of appeals (board), and on August 15, 2005, Johnson also applied to the board for a variance and a special permit to allow a single-family residence on the property. Johnson then acquired lot 38 from the prior owner by deed of August 26, 2005.

After a public hearing in October, 2005, the board upheld the denial of the building permit and declined to issue a variance or special permit. On the former point, the board concluded in part that "[w]hen the Town took a portion of the Locus in 1971, . . . [t]he Locus was no longer the same parcel as represented [on the 1876 plan]. Nor was the Locus the same parcel as referenced on any deed recorded prior to the adoption of the [by-law's] increased area and frontage requirements with which the Locus was non-conforming. As a result, as of the 1971 taking, the Locus was no longer entitled to grandfather protection if it ever had been . . . ."

---

[6] It is unfortunate, though not legally significant for our purposes, that earlier correspondence between the building inspector and town counsel indicated their initial view that lot 38 was buildable, which may have given Johnson a sense of optimism.

[7] On the latter point, the building inspector concluded that the neighboring parcel had been "adjoining land" held in common ownership with lot 38 under G. L. c. 40A, § 6, fourth par. See *Carabetta* v. *Board of Appeals of Truro*, 73 Mass. App. Ct. 266, 268-269 & n.8 (2008) (merger doctrine incorporated in statutory grandfather provision). She so found even though the 1876 plan showed a "paper" way dividing the two parcels. The Andover board of appeals concurred, noting that the paper street was not built for 130 years until Johnson did so in 2005 in an effort to obtain the building permit. The Land Court judge disagreed, ruling that the existence of others' easement rights to even a paper way sufficiently interrupted the use of the parcels as one lot, making them not "adjoining" under the statute. Our view of the case obviates any need to consider whether the Land Court judge was correct in that ruling, and we express no view on the subject.

Johnson appealed to the Land Court. Hearing the case on Johnson's summary judgment motion, the judge agreed with the board's reasoning: he observed that the "[l]ocus, as it exists today, was . . . not reasonably designated on a recorded instrument until . . . the 1971 Taking, [which,] together with the 1970 Plan, was recorded with the Registry, a number of years after the [by-law] amendment" increasing the area requirement. As a result he ruled that G. L. c. 40A, § 6, fourth par., only protected lot 38 from zoning amendments adopted subsequent to the taking, and that the lot must comply with the one-acre lot-size minimum that has existed since before that time. The judge thus determined that the building permit for lot 38 was properly denied because it was undersized and "not a buildable lot pursuant to G. L. c. 40A, § 6, fourth par." He also affirmed the denial of the special permit as it was "based on the status of Locus as a grandfathered lot." Finally, he agreed with the board that Johnson did not meet the requirements for a variance.[8]

Johnson appealed the resulting judgment to this court. In an unpublished decision,[9] we vacated the judgment and remanded for clarification of what we perceived might be a finding of undisputed fact by the judge (perhaps based upon agreement by the parties) that Johnson's construction of certain paper streets in 2005 had provided the necessary access and frontage for lot 38. We wrote that, "[b]ased upon the truncated record before us, it appears that frontage and access to the locus is inadequate, however, that issue must be resolved by the trial court before the matter is ready for review in this court." Our concern was that it might be unnecessary to consider the effect of a taking on grandfather protection if frontage and access to lot 38 were inadequate as matter of law. In his memorandum after remand, the judge stated that he had not found it undisputed that access and frontage were adequate,[10] and he observed that the summary judgment materials left such adequacy an unresolved factual question. He emphasized that his allowance of summary

---

[8]Johnson does not contest the denial of the variance in the present appeal.

[9]*Johnson* v. *Board of Appeals of Andover*, 74 Mass. App. Ct. 1102 (2009).

[10]The judge added the following emphasized language to his earlier factual finding: "In 2005, plaintiff constructed portions of Reynolds Street and Anderson Avenue *in an attempt* to provide frontage and access to locus" (emphasis supplied).

judgment had rested solely on the lack of grandfather protection from the minimum lot area requirement, and he ordered that the earlier judgment would stand. On Johnson's appeal after remand, we concur in the judge's treatment of the access and frontage issues, and now consider only the taking question.[11]

*Discussion.* "We first set forth the applicable law. The first sentence of G. L. c. 40A, § 6, fourth par., the portion of the statute on which the board relied in [deny]ing the permit, 'exempts certain lots from increased zoning restrictions provided certain conditions are met . . . .' *Adamowicz* v. *Ipswich,* 395 Mass. 757, 758 (1985). These conditions are that, 'at the time of recording or endorsement,' the lot (1) had at least 5,000 square feet with fifty feet of frontage, (2) 'was not held in common ownership with any adjoining land,' and (3) 'conformed to then existing requirements.' G. L. c. 40[A], § 6. We have interpreted the 'time of recording or endorsement' to mean the time of 'the most recent instrument of record prior to the effective date of the zoning change.' *Adamowicz* v. *Ipswich, supra* at 762 ('the status of the lot immediately prior to the zoning change is controlling')." *Rourke* v. *Rothman,* 448 Mass. 190, 191-192 (2007) (footnote omitted). "Section 6 is concerned with protecting a once valid lot from being rendered unbuildable for residential purposes, assuming the lot meets modest minimum area . . . and frontage . . . requirements." *Adamowicz* v. *Ipswich, supra* at 763, quoting from *Sturges* v. *Chilmark,* 380 Mass. 246, 261 (1980).

As we have observed, the parcel containing lot 38 was first shown on an 1876 plan recorded with the registry of deeds. However, as a consequence of the taking effected in 1971, a new plan was endorsed and recorded. It was this plan that first showed the specific lot for which Johnson later sought the building permit.[12] The pre-taking parcel was not the relevant lot in considering whether, at the time of Johnson's application, the locus met current zoning requirements or was grandfathered

---

[11]Contrary to Johnson's argument, the fact that we previously vacated the judgment does not mean we determined that the taking left in place the grandfather protection of the subject property. We simply did not reach that question.

[12]At all relevant times, the Andover zoning by-law has defined "lot" as "[a]n uninterrupted area of land in one ownership with definitive boundaries, the use of which is subject to the provisions of this bylaw."

from a prior increase.[13] Therefore, as the Land Court judge ruled, G. L. c. 40A, § 6, fourth par., only protects lot 38 from zoning amendments subsequent to the taking.[14] As noted, after the taking the remaining lot had only approximately one-half of the required area and is therefore not a buildable lot without a variance. See G. L. c. 40A, §§ 7, 10.

Johnson counters that unfortunate policy implications would result from upholding this Land Court decision. He suggests, first, that it is unfair to a landowner to change the status of his land in such a significant way, based upon a taking, over which he has no control. However, authority to change the status of the property is not fundamentally different from the undoubted authority of government to take the entire property against the landowner's will in the first place. See *Devine* v. *Nantucket*, 449 Mass. 499, 506 (2007). In addition, in circumstances where a taking causes a nonconforming lot to lose its protected status under G. L. c. 40A, § 6, it is open to the property owner to seek compensation for the diminution of value attributable to that loss. See *Nonni* v. *Commonwealth*, 356 Mass. 264, 270 (1969) ("The petitioners are entitled to be compensated for the fair market value of that of which they have been deprived. . . . The measure of damages is the market value, at the date of taking, of the land taken *and the diminution in value, due to the taking, of the owner's remaining land*" [emphasis supplied]). Regarding the issue of fairness to Johnson we also note, as did the judge, that he purchased the property with notice of the 1971 taking. Furthermore, Johnson bought lot 38 after the building inspector denied the building permit and while his requests for relief were still pending before the board.

Johnson's second argument, that denying statutory grandfather status would increase costs to a town because the town could then be required to pay for the accompanying loss in the land's value, also is not persuasive. Grandfather protection under G. L. c. 40A, § 6, is entirely of statutory origin, and we are not at liberty to ignore the terms of the statute from which the protec-

---

[13]Indeed, the pre-taking parcel was no longer a "lot" under the by-law because it was not an "area of land in one ownership."

[14]Specifically, the protection extends to amendments subsequent to the 1970 endorsement of the plan of taking.

tion derives. Moreover, as the judge suggested, it would seem to be open to a municipality to provide grandfathering in its zoning by-law to lots remaining after partial takings.

*Conclusion.* The Land Court judge properly determined that summary judgment should enter for the defendants. Accordingly, the order after remand is affirmed and the matter is remanded for entry of judgment consistent with this opinion.[15]

*So ordered.*

---

[15]After the proceedings on remand, judgment did not re-enter. This was no barrier to our deciding the appeal.